The STATE of Ohio, Appellee,

v.

ADAMS, Appellant.

[Cite as *State v. Adams* (1992), 73 Ohio App.3d 735.]

Court of Appeals of Ohio,
Champaign County.

No. 91–CA–07.

Decided March 30, 1992.

---

736

*G.S. Weithman,* Municipal Prosecutor, for appellee.

*Joseph M. Juergens,* for appellant.

GRADY, Judge.

Defendant-appellant, Lisa Ann Adams, appeals from her conviction for a violation of Section 333.01(a)(3) of the Urbana Codified Ordinances, which prohibits operation of a vehicle by any person who has concentration of .10 of one gram or more by weight of alcohol per two hundred ten liters of his breath. Adams' conviction was entered upon her plea of no contest, after the trial court overruled her motion to suppress evidence of her breath test. Adams argues that the trial court erred in overruling her motion to suppress

because the procedures of the test were not in compliance with relevant portions of the Ohio Administrative Code.

Plaintiff-appellee, the state of Ohio, argues that any error was waived by Adams' plea of no contest. Appellee argues that Adams' motion to suppress was more properly, and could only be, a motion *in limine* because the issues it raised concerned admissibility of evidence and not the constitutionality of the process by which it was obtained.

We shall overrule the assignments of error presented by Adams upon a finding that the procedures followed in her evidential breath test were in compliance with relevant provisions in the Ohio Administrative Code. Appellee's argument of waiver is overruled on the authority of *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32. The judgment of the trial court will be affirmed.

I

Facts

On December 10, 1991, at approximately 2:43 a.m., Adams was arrested by Urbana Police Officer John Purinton and charged with driving or physical control of a vehicle while under the influence of alcohol, in violation of Section 333.01(a)(3), Urbana Codified Ordinances. Officer Purinton placed Adams in the rear seat of his police cruiser and transported her to the Urbana Police Department. Purinton placed Adams in a room in which the department's breath test machine is housed while he prepared to administer the test. Officer Purinton administered the test at 3:15 a.m. The results showed that Adams' breath contained 0.027 grams of alcohol per twenty-one liters of breath. Adams was ordered to appear in court upon charges of operating a vehicle while under the influence of alcohol and for weaving, in violation of Section 333.01(a)(3) and Section 331.34 of the Urbana Codified Ordinances.

Adams filed a motion to suppress evidence of her breath test. The court heard testimony of arresting officers and of Adams. The court overruled the motion and assigned the matter for trial. Thereafter, Adams entered a plea of no contest to the charge of driving under the influence of alcohol, in violation of Section 333.01(a)(3) of the Urbana Codified Ordinances. The weaving charge was dismissed. Adams was convicted on her plea. Adams filed a timely notice of appeal and now presents three assignments of error.

Appellee argues that Adams' plea of no contest has waived the error alleged. That argument will be considered separately and after consideration of appellant's three assignments of error.

## II
### Observation of the Subject

For her first assignment of error, appellant states:

"Trial court erred in overruling defendant-appellant's motion to suppress the test results inasmuch as the arresting officer conducting the test given to defendant-appellant, failed to observe the subject for a period of twenty (20) minutes prior to the test as required by Ohio Administrative Code Rule 3701–53–02 Appendix C."

Section 333.01(a)(3) of the Urbana Codified Ordinances is a local municipal reenactment of R.C. 4511.19(A)(3). R.C. 4511.19(B) permits the court to admit evidence of the concentration of alcohol in the defendant's breath as shown by chemical analysis. The section further provides:

"Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to Section 3701.143 of the Revised Code."

The Director of Health has provided for such methods in Ohio Adm.Code 3701–53–02(B), which provides:

"Breath samples of deep lung (alveolar) air shall be analyzed for purposes of determining whether a person has a prohibited breath-alcohol concentration with instruments approved under paragraph (A) of this rule. *Breath samples shall be analyzed according to the operational checklist for the instrument being used, as set forth in appendices A to G to this rule.* Checklist forms recording the results of subject tests shall be identified and retained in accordance with paragraph (A) of rule 3701–53–01 of the Administrative Code." (Emphasis added.)

The "instrument" used to test Adams' breath was an Intoxilyzer 4011 series instrument. Officer Purinton testified that he is licensed to operate the machine. Appendix C of the Administrative Regulations issued by the Department of Health provides a nine-step operational check list for that machine. The first provision requires:

"1. Observe subject for twenty minutes prior to testing to prevent oral intake of any material."

Officer Purinton testified that he had Adams under observation from approximately 2:50 a.m. until the test was administered at 3:15 a.m. He testified that this observation took place while Adams was being transported to the police station in his cruiser and while at the police station awaiting the test. He testified that he could see Adams while she was seated in the rear of his police cruiser and that after they arrived at the police station Adams

remained in his observation. Purinton was asked whether he observed Adams for twenty minutes prior to testing to prevent oral intake of any material, and he answered that he had.

Appellant argues that Officer Purinton could not have had her under observation while she was in the rear seat of his vehicle as he could not have seen her at every moment, and that while they were at the police station he left her presence, if only briefly, to obtain documents, which also impaired his ability to keep her under "observation."

██ The purpose of the observation rule is to require positive evidence that during the twenty minutes prior to the test the accused did not ingest some material which might produce an inaccurate test result. *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740. A witness who testifies to that foundational fact is not required to show that the subject was constantly in his gaze, but only that during the relevant period the subject was kept in such a location or condition or under such circumstances that one may reasonably infer that his ingestion of any material without the knowledge of the witness is unlikely or improbable. To overcome that inference, the accused must show that he or she did, in fact, ingest some material during the twenty-minute period. The "mere assertion that ingestion was hypothetically possible ought not to vitiate the observation period foundational fact so as to render the breathalyzer test results inadmissible." *Id.* at 192, 6 O.O.3d at 421, 370 N.E.2d at 743.

We are satisfied that the conditions and circumstances in which appellant was kept by Officer Purinton after her arrest were sufficient to allow the court to reasonably infer that Adams' ingestion of any material without the officer's knowledge was unlikely or improbable. Further, Adams has offered no testimony or other evidence that she did, in fact, ingest material during the twenty-minute period, and that is insufficient to overcome the inferences to be drawn from the officer's testimony.

The assignment of error is overruled.

### III

### Radio Frequency Interference

Appellant states as her second assignment of error:

"The breath testing device used to determine the alcohol content of defendant-appellant's blood, was improperly gridded with respect to radio frequency interference as required by Ohio Administrative Code Rule 3701–53–02, Appendix H. In addition, under the aforementioned Ohio Administrative Code Rule, the sketch of the floor plan surrounding the instrument, is either non-

existent, or improperly prepared, so as not to comply with that portion of the Ohio Administrative Code Rules as to conducting the radio frequency interference survey."

■ The reliability of the results produced by breath-testing instruments designed and used to determine blood-alcohol levels is dependent upon three variables: (1) the qualifications of the operator, (2) the condition of the machine, and (3) the test protocol followed. If the state seeks to admit evidence of test results in an OMVI prosecution, it must produce evidence which demonstrates minimum levels of reliability for each variable. *Cincinnati v. Sand* (1975), 43 Ohio St.2d 79, 72 O.O.2d 44, 330 N.E.2d 908.

The phenomenon known as "radio frequency interference," or RFI, concerns the condition of the breath-testing instrument or machine. The test results produced by the machine may be seriously and adversely affected when it is operated in an electromagnetic field produced by a nearby radio transmitter. This is a particular problem for evidential breath-testing procedures because the police environment in which testing devices are kept and operated typically contains numerous sources of RFI, including AM and FM radios, police station dispatchers, hand-held police transmitters, teletypes, and police radar units. Taylor, Drunk Driving Defense (3 Ed.1991), Section 6.0.5.

The question for courts considering the RFI phenomenon is whether specific radio frequencies and signal strengths operating in the environment of the testing instrument or machine during the time interval of a breath test, the results of which the state would introduce and rely on in its case against an accused, have impaired the operation of the machine and the reliability of its test results. The existing sources of radio transmissions are but one factor to be considered. The particular electromagnetic fields produced by the transmission may be further affected by the configuration of the room in which the machine is housed and the furniture, human bodies, and other things in the room. The breath-testing machine acts as an antenna to receive radio transmissions from nearby sources. Therefore, it is always recommended that a machine be tested in its specific environment under conditions existing there. *Id.*

The Director of the Department of Health has, pursuant to R.C. 4511.19(B), devised and published an RFI test protocol for use in measuring the RFI factors affecting the operation of any breath-testing machine used to support a charge of OMVI. That protocol is set out in Ohio Adm.Code 3701–53–02(C), which provides:

"A radio frequency interference (RFI) survey shall be performed by a senior operator for each breath testing instrument listed in paragraphs (A)(1) to (A)(3) and (A)(5) to (A)(7) of this rule that is in operation at each breath

testing site. RFI surveys are not required for the instrument listed in paragraph (A)(4) of this rule. RFI surveys performed on and after the effective date of this amendment shall be performed in accordance with the instructions on the form set forth in appendix H to this rule. RFI surveys conducted before the effective date of this amendment in accordance with this rule as it existed when the surveys were conducted shall remain valid until an event that would require a new RFI survey under paragraph (C)(2) of this rule occurs.

"(1) Radio transmitting antennae shall not be used within any RFI-affected zone during conduct of a subject test or a calibration check. No radio transmitting antennae that have not been subject to an RFI survey shall be used within thirty feet of the breath testing instrument during conduct of a subject test or a calibration check.

"(2) A new RFI survey shall be conducted when:

"(a) The location of the breath testing instrument, when used for testing, is moved more than one foot in any direction;

"(b) The instrument's axis is changed;

"(c) The frequency band of the radio transmitting equipment, as defined by the chart set forth in this paragraph, is changed;

"RADIO FREQUENCY BANDS

"H 3 to 30 Megahertz

"VHF 30 to 300 Megahertz

"UHF 300 to 3000 Megahertz

"(d) The radio transmitting equipment's rated output power is changed;

"(e) Any electronic component of the instrument is changed, other than replacement of parts with original equipment replacement parts or factory-authorized replacement parts meeting the same specifications as the original equipment parts; or

"(f) A new breath testing instrument is placed into service.

"(3) The original RFI survey form and any subsequent RFI survey forms shall be kept on the file in the area where tests are performed.

Appendix H of the rule, captioned "RFI Survey," provides a specific protocol to be used with each breath-testing instrument approved by the Department of Health. Exhibits A through D attached to this opinion are copies of the two surveys done for the Intoxilyzer 4011 series instrument used in this case and accurately reflect the protocol format provided by the Department of Health at the time of appellant's breath test.

In addition to the RFI survey requirement, the Director of Health has provided rules requiring periodic calibration checks of approved evidential breath-testing instruments. See Ohio Adm.Code 3701–53–04. The purpose of the calibration check is to determine whether the measurement settings for the instrument have changed so as to produce erroneous results, and to require removal of the instrument from service until the problem is corrected. In contrast, the purpose of the RFI survey is to determine whether the *environment* in which the instrument operates contains electromagnetic or radio interference that may affect operation of the breath-testing instrument. Such interference is transitory in that it can occur only when an electromagnetic field is produced during actual radio transmission. The maladjustments determined by the calibration check, on the other hand, are presumably constant from the point in time at which the maladjustment occurs until they are repaired.

The phenomenon examined in an RFI survey is the degree of interference, if any, created by radios transmitting within the environment of the breath-testing instrument. The Director of Health has determined that environment to be the area within a thirty-foot radius of the instrument's permanent location. A survey must be performed for each frequency regularly broadcast from within that area to determine its "zone of interference." That zone is the area in which broadcast of the frequency creates a variance in excess of a prescribed degree in the results produced by the instrument. During an evidential breath test or calibration, no frequency for which an RFI survey has been performed may be broadcast from within the zone of interference determined for it with respect to the instrument used. During an evidential breath test or calibration, no frequency for which an RFI survey has not been performed may be broadcast from within the environment, *i.e.*, a thirty-foot radius.

These RFI survey regulations present several factors affecting admissibility of the results produced by a breath-testing instrument to prove a charge of OMVI.

First, because RFI can occur only if a radio frequency source is actually operated within the environment of a testing instrument, it would logically follow that one seeking to exclude evidence of breath-test results has the burden to show that a radio broadcast took place within the environment or RFI-affected zone during the time interval of the test. Absent that showing, the failure to conduct an RFI survey, or to conduct one properly, should be irrelevant. However, the General Assembly has in R.C. 4511.-19(A)(3) provided that bodily substances taken to prove a violation of the statute "shall be analyzed in accordance with methods approved by the

director of health," and the director has provided in Ohio Adm.Code 3701–53–02(C) that an RFI survey conducted with the protocol prescribed "shall be performed" for each approved breath-testing instrument. Furthermore, R.C. 4511.19 is a strict liability statute in which the accuracy of breath-test results are a crucial issue in determining a defendant's guilt or innocence. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32. Therefore, proper conduct of an RFI survey and report of its results, both originally and upon the happening of any of the events provided in Ohio Adm.Code 3701–53–02(C)(2), is a necessary predicate to the introduction in evidence of the results of a breath test using one of the instruments approved for that purpose by the Director of Health. The state has the burden of proof concerning the issue. *Cincinnati v. Sand, supra.*

■ Second, during the time interval of an evidential breath test no radio may be broadcast at a surveyed frequency within the RFI "zone of interference" determined for that frequency with respect to the testing instrument, and no radio may be broadcast at any unsurveyed frequency within the thirty-foot radius constituting the environment of the instrument. Conformity with these requirements is not, however, a foundational predicate to the introduction of breath-test results. They are not a qualifying factor. Rather, as they may affect reliability only if they occur, the burden is on the accused to come forward with evidence that either or both did occur at the relevant time, *i.e.*, during the time interval of the accused's test. A sufficient showing of either precludes introduction of evidence of the breath-test results concerned.

Urbana Police Officer Matthew Lingrell testified during the hearing on Adams' motion to suppress that he is responsible for maintenance and recalibration of the Intoxilyzer 4011 series instrument housed at the Urbana Police Department and that he supervised and performed RFI surveys for the machine on January 1, 1991, the most recent surveys prior to appellant's breath test. The two survey reports prepared by Officer Lingrell are attached hereto as Exhibits A through D.

Officer Lingrell testified that RFI surveys were performed for the two particular radio broadcast frequencies used by the Urbana Police Department, 154.875 for hand-held two-watt transmitters and 155.370 for the forty-watt mobile radios used in the department's vehicles. He testified that there is no base transmitter that operates within thirty feet of the location of the machine. Officer Lingrell also testified that although the Urbana Fire Department, which is housed in the same building as the police department, uses a different radio broadcast frequency, the fire department's vehicles containing those radios do not come within thirty feet of the breath-testing machine. Officer Lingrell also testified that the Ohio Highway Patrol regularly uses the

Urbana Police Department's Intoxilyzer 4011 series machine, but that the RFI survey he performed did not include radio frequencies used by the Ohio State Highway Patrol in the mobile radios in its vehicles.

■ Appellant argues that evidence of the results of her breath test should not be introduced because no RFI survey was performed for the frequencies used by the Ohio Highway Patrol. However, appellant has failed to show a necessary predicate; that those frequencies were, in fact, transmitted from a radio within at least thirty feet of the testing instrument during the time interval in which her test was performed. Such evidence is necessary to show prejudice by way of possibly incorrect test results. Absent evidence that those frequencies were in operation within thirty feet of the testing instrument during the accused's breath test, failure to perform an RFI survey for them does not preclude admission of the test results produced.

Appellant also argues that the two RFI surveys failed to comply with the directive to "sketch the floor plan surrounding the instrument" on the grid diagram provided, in two respects. First, that the dimensions shown for the room do not conform to the lines of the grid, and, second, that the drawing fails to depict the placement of walls or dividers and the adjoining quarters of the Urbana Fire Department.

■ Officer Lingrell testified that the lines drawn on the two grids and the dimensions provided there correctly describe the size of the room in which the Intoxilyzer 4011 is kept and its location in the room. He testified that his drawing did not seek to conform to the grid line pattern, and that he " * * * just used the feet that were already given by * * * the vector itself" on the grid. We find that the drawing provided, while not to a scale conforming to the grid pattern, describes the dimensions of the room and the location of the machine with sufficient clarity to satisfy the purposes of the rule and are in substantial compliance with it. See *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902. Absent a showing of prejudice, which has not been made, substantial compliance is sufficient. *Id.*

■ As for the failure to depict dividers or other things in the room, the record does not reflect what was not shown. The RFI survey protocol in Appendix H requires only a sketch of the floor plan surrounding the instrument. That was done. No depiction of other things in the room or of any other rooms is required by the protocol. That may be appropriate if an RFI source is in another room within thirty feet of the breath-testing instrument. However, there is no evidence of that here.

The assignment of error will be overruled.

## IV

## Certification

Appellant states as her third assignment of error:

"The trial court erred in sustaining defendant-appellant's motion with respect to request to suppress the breath test, inasmuch as there was no proof introduced, that the manipulator or individual administering test was properly licensed in conjunction with Ohio Administrative Code Rule 3701–53–09(C)."

Officer Purinton administered appellant's breath test. The officer testified that he holds a certificate from the Ohio Department of Health qualifying him to do so, and he offered a form of certificate issued February 16, 1991, in support of his testimony. He testified that the certificate represents "my first renewal" and that his initial certification was issued "two years ago."

■ Appellant argues that the evidence presented by the officer fails to establish that on the date of her test, February 10, 1991, he was qualified to administer the test. We do not agree. The operator is not required to produce a copy of his certification. He need only offer positive evidence that he was qualified by the Ohio Department of Health to administer the test at the time that he did so. Officer Purinton's testimony substantiates that fact, and appellant has offered no contrary evidence.

The assignment of error will be overruled.

## V

## Waiver of Error

■ Appellee has presented an argument in opposition to appellant's assignment of error, which states:

"The defendant-appellant is not properly before this court having entered a plea of no contest in this matter (and) having relied on a pre-trial motion to suppress and arguing issues that should have been argued in motion in limine."

The Supreme Court has expressly rejected this argument in *Defiance v. Kretz, supra,* the syllabus of which provides:

"A motion to suppress is a proper pretrial procedure for challenging breathalyzer test results when the defendant is charged with a violation of R.C. 4511.19(A)(3). A plea of no contest does not waive a defendant's appeal from an adverse ruling on the motion."

The argument is overruled.

## VI

### Conclusion

Having overruled appellant's three assignments of error, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

FAIN, P.J., and WILSON, J., concur.

## EXHIBIT A

**GENERAL INSTRUCTIONS**
Turn on the instrument. While
it warms to its operating temperature,
complete the following information in ink:

| Jan. 1, 1991 | Urbana Police Division | | 01102 |
|---|---|---|---|
| SURVEY DATE | AGENCY | | TEST SITE NUMBER |

| Intoxilyzer 4011 Series | CMI | 001155 | 02-14-90 |
|---|---|---|---|
| INSTRUMENT TYPE | MODEL | SERIAL NUMBER | DATE OF PREVIOUS SURVEY |

EXTERNAL RFI DETECTOR? [X]YES [ ]NO    IF 'YES' SPECIFY MAKE/MODEL _RFI Sentrol III_

| 155.370 (UPD ☐) | RADIO TYPE: [ ]BASE [ ]HAND | General Electric | 40 Watts |
|---|---|---|---|
| RADIO FREQUENCY | (CHECK ONLY ONE) [X]MOBILE  HELD | MANUFACTURER | RATED OUTPUT POWER |

| Ptl. Matthew D. Lingrell | 34890-S-2 | Ptl. Garry L. Kimpel |
|---|---|---|
| TEST CONDUCTED BY | S/O PERMIT NUMBER | ASSISTED BY (PERMIT NOT REQUIRED) |

Using the diagram (page 2), Sketch the floor plan surrounding the instrument. If radios are capable of multiple band transmission, each band is to be tested, using a separate form for each band. When the instrument has reached operating temperature, two persons and two hand-held radios are needed for testing. Senior operator should remain with instrument while other person transmits by keying radio. Person assisting starts at 30 feet from instrument on line 1 proceeding to instrument as physically possible. To determine RFI affected zone, refer to instructions below for instrument being tested:

BREATHALYZER 900/900A: Insert two matching unopened ampoules and balance the galvanometer. With photometer light on, transmit while approaching instrument. If the needle deflects, mark an 'X' on line at farthest distance from instrument that deflection occurs.

TOXILYZER 5000/BAC VERIFIER/BAC DATAMASTER: These instruments are protected from interferring radio frequencies by an internal RFI detector. Confirm operation of the detector by placing the instrument in subject test mode, and transmit while approaching the instrument. When instrument detects radio interference, mark diagram with an 'X' at farthest point from instrument that interference is noted.

INTOXILYZER 4011 SERIES: With instrument in zero set mode; transmit while approaching the instrument. If display shows variance greater than 0.005, mark diagram with an 'X' at the farthest distance from the instrument that variance occurs.

ALCOTEST 7110: Extend breath tube when instrument display shows 'PLEASE BLOW.' Transmit while approaching instrument. If display shows an error code, mark diagram with an 'X' at the farthest distance from the instrument that an error condition occurs.

GENERAL INSTRUCTIONS, (continued): Repeat above detailed tests for lines 2 through 8. If no RFI is detected at any distance on any of the 8 vectors, mark 'N' block in diagram legend labeled Hand Held. Test base radio if transmitter antenna is within 30 feet of instrument. Refer to individual instrument directions above for instrument preparation; with instrument and base radio antenna in normal locations, transmit. If base radio transmission causes interference as defined in above instrument section, mark 'Y' block in diagram legend labeled BASE. If no interference is noted, mark 'N' block. Test mobile radio if transmitter antenna can be positioned within 30 feet from instrument. Refer to individual instrument directions above for instrument preparation. With mobile radio positioned closet to instrument, transmit. If mobile transmission causes interference, as defined in above instrument section, mark 'Y' block in diagram legend

FILED

APR 10 1991

CHAMPAIGN COUNTY
MUNICIPAL COURT
Janet Amelt, Clerk
Urbana, Ohio

Rule 3701-53-02, Appendix H    page 1 of 2    HEA2617, rev. 03/90

## EXHIBIT B

ɔeled MOBILE. If no interference is noted, mark 'N' block. If 'Y' block is marked in
y legend entries, transmission of radio(s) indicated by 'Y' shall not occur within the
᾽ᴈrmined affected zone(s) during breath tests or calibration checks.

ƘTERNAL RFI DETECTORS: If an external RFI detector is utilized, it is to be tested
. each of the 8 vectors for sensitivity. Should the detector sense RFI, mark diagram
th an 'O' at the farthest distance from the detector where interference is observed.
ɪnsitivity of detector units is to be adjusted so that the detector will be more sensitive
interference than the instrument.

LEGEND    Scale:   1 square=1 square foot
                   I=Instrument

INTERFERENCE
Hand Held [ ]Y  [ ]N
Mobile    [X]Y  [ ]N
Base      [ ]Y  [ ]N

# 750

GENE
Turn
it wa
compl

## EXHIBIT C

# RFI Survey

| | | | |
|---|---|---|---|
| Jan. 1, 1991 | Urbana Police Division | | 01102 |
| SURVEY DATE | AGENCY | | TEST SITE NUMBER |

| | | | |
|---|---|---|---|
| Intoxilyzer 4011 Series | CMI | 001155 | 02-14-90 |
| INSTRUMENT TYPE | MODEL | SERIAL NUMBER | DATE OF PREVIOUS SURVEY |

EXTERNAL RFI DETECTOR? [X] YES [ ] NO   IF 'YES' SPECIFY MAKE/MODEL   RFI Sentrol III

| | | | |
|---|---|---|---|
| 154.875 (UPD 1) | RADIO TYPE: [ ] BASE [X] HAND [ ] MOBILE | General Electric | 2 Watts |
| RADIO FREQUENCY | (CHECK ONLY ONE) HELD | MANUFACTURER | RATED OUTPUT POWER |

| | | |
|---|---|---|
| Ptl. Matthew D. Lingrell | 34890-S-2 | Ptl. Garry L. Kimpel |
| TEST CONDUCTED BY | S/O PERMIT NUMBER | ASSISTED BY (PERMIT NOT REQUIRED) |

Using the diagram (page 2), Sketch the floor plan surrounding the instrument. If radios are capable of multiple band transmission, each band is to be tested, using a separate form for each band. When the instrument has reached operating temperature, two persons and two hand-held radios are needed for testing. Senior operator should remain with instrument while other person transmits by keying radio. Person assisting starts at 30 feet from instrument on line 1 proceeding to instrument as physically possible. To determine RFI affected zone, refer to instructions below for instrument being tested:

BREATHALYZER 900/900A: Insert two matching unopened ampoules and balance the galvanometer. With photometer light on, transmit while approaching instrument. If the needle deflects, mark an 'X' on line at farthest distance from instrument that deflection occurs.

INTOXILYZER 5000/BAC VERIFIER/BAC DATAMASTER: These instruments are protected om interfering radio frequencies by an internal RFI detector. Confirm operation of the detector by placing the instrument in subject test mode, and transmit while approaching the instrument. When instrument detects radio interference, mark diagram with an 'X' at farthest point from instrument that interference is noted.

INTOXILYZER 4011 SERIES: With instrument in zero set mode, transmit while approaching the instrument. If display shows variance greater than 0.005, mark diagram with an 'X' at the farthest distance from the instrument that variance occurs.

ALCOTEST 7110: Extend breath tube when instrument display shows 'PLEASE BLOW.' Transmit while approaching instrument. If display shows an error code, mark diagram with an 'X' at the farthest distance from the instrument that an error condition occurs.

GENERAL INSTRUCTIONS, (continued): Repeat above detailed tests for lines 2 through . If no RFI is detected at any distance on any of the 8 vectors, mark 'N' block in iagram legend labeled Hand Held. Test base radio if transmitter antenna is within 30 eet of instrument. Refer to individual instrument directions above for instrument pre-aration; with instrument and base radio antenna in normal locations, transmit. If base adio transmission causes interference as defined in above instrument section, mark 'Y' lock in diagram legend labeled BASE. If no interference is noted, mark 'N' block. est mobile radio if transmitter antenna can be positioned within 30 feet from instrument. efer to individual instrument directions above for instrument preparation. With mobile adio positioned closet to instrument, transmit. If mobile transmission causes inter-rence, as defined in above instrument section, mark 'Y' block in diagram legend   FILED

APR 1 0 1991

| | | |
|---|---|---|
| .e 3701-53-02, Appendix H | page 1 of 2 | HEA2617, rev. 03/90 |

CHAMPAIGN COUNTY
MUNICIPAL COURT
Janal Arnolt, Clerk
Urbana, Ohio

## EXHIBIT D

abeled MOBILE. If no interference is noted, mark 'N' block. If 'Y' block is marked in any legend entries, transmission of radio(s) indicated by 'Y' shall not occur within the determined affected zone(s) during breath tests or calibration checks.

\_XTERNAL RFI DETECTORS: If an external RFI detector is utilized, it is to be tested >n each of the 8 vectors for sensitivity. Should the detector sense RFI, mark diagram with an 'O' at the farthest distance from the detector where interference is observed. Sensitivity of detector units is to be adjusted so that the detector will be more sensitive o interference than the instrument.

EGEND        Scale:   1 square=1 square foot
                          I=Instrument

INTERFERENCE
Hand Held
Mobile
Base