Defendant-appellant Anthony W. King appeals from his conviction and sentence for a DUI, following a no-contest plea. King contends that the trial court erred by denying his motion to suppress evidence. King contends that the arresting officer, a park ranger, made the arrest outside the territory within which he is authorized to make arrests, that he lacked reasonable, articulable suspicion to stop King and to require that King perform several field sobriety tests, that the arresting officer lacked probable cause to make the arrest, and that King was not advised of his right to consult with an attorney, citing Mirandav. Arizona (1965), 384 U.S. 436.
We conclude that any defect in the arresting officer's territorial authority to make the arrest may not serve as a basis for invoking the exclusionary rule, that there is evidence in the record supporting the existence of reasonable, articulable suspicion for the investigative stop, supporting the enhanced suspicion for the administration of field sobriety tests, and supporting probable cause for the arrest. We further conclude that any failure to provide Miranda
warnings would not serve as a basis for excluding the breathalyzer tests, because breathalyzer tests are not testimonial in nature. We also conclude that any interference with King's right to obtain the advice of counsel before deciding whether to take the test may not serve as a basis for invoking the exclusionary rule. Accordingly, the judgment of the trial court is Affirmed.
 I
Curt Wolfe, a newly-hired Clark County Park District Ranger, had just left George Rogers Clark Park at about 10:40 p.m. in late May, 1998, and was heading south on Tecumseh Road, which adjoins the park, when he became aware of a car being driven by King, who was going in the opposite direction. Wolfe saw King go off the right side of the marked roadway, then swerve left, crossing the center line in front of Wolfe. Wolfe was required to swerve off the roadway, onto the right shoulder, to avoid a collision.
Wolfe turned around and followed King. Wolfe saw King go off the right side of the marked roadway once more, and then swerve left of center, to the extent that King's car was straddling the center line of the roadway, when he stopped King. As Wolfe confronted King, he detected the odor of alcohol, which he identified as emanating from King's breath. Wolfe detected no slurred speech, but testified King's eyes were "glossed over" and bloodshot. Wolfe asked King if he had had anything to drink, and King told him that he had two beers.
Wolfe required King to perform three field sobriety tests. Wolfe testified that King failed all three tests. Based upon the erratic driving Wolfe had observed, the odor of alcohol, King's "glossed over," bloodshot eyes, and King's failures on the three field sobriety tests, Wolfe arrested King for DUI, and took him to a state highway patrol post, where a breathalyzer test was administered by an Ohio state trooper. Besides being cited for DUI, King was also cited for operating a motor vehicle without proof of financial responsibility, for crossing the center line, and for a seatbelt violation.
King moved to suppress the evidence, contending that it was obtained as the result of an unlawful stop and arrest. Following a hearing, King's motion was overruled. Thereafter, King pled no contest to the DUI charge, and the other charges were dismissed. King was found guilty of DUI, and sentenced accordingly. From his conviction and sentence, King appeals.
 II
King's sole Assignment of Error is as follows:
 THE TRIAL COURT ERRED WHEN IT DID NOT SUPPRESS THE EVIDENCE BECAUSE THE ARRESTING OFFICER EXCEEDED HIS LAWFUL JURISDICTION.
King's first argument in support of his assignment of error is as follows:
 THE OFFICER LACKED REASONABLE, ARTICULABLE SUSPICION OF WRONGDOING NECESSARY TO STOP AND SEIZE THE PERSON OF DEFENDANT.
Although King and the State engage in an interesting argument concerning Park Ranger Wolfe's territorial authority to have stopped and arrested King, we find it unnecessary to resolve that argument. A defect in an arresting officer's territorial jurisdiction to make an arrest does not justify invocation of the exclusionary rule under either the Fourth Amendment to the United States Constitution or Article I, Section 14 of the Ohio Constitution. As long as the arresting officer has probable cause to make the arrest, there is no constitutional violation, and a mere statutory violation does not justify invocation of the exclusionary rule. Kettering v. Hollen (1980), 64 Ohio St.2d 232, at 235.
King's first argument in support of his assignment of error is without merit.
 III
King's second argument in support of his assignment of error is as follows:
 THE OFFICER LACKED PROBABLE CAUSE TO ARREST.
King contends that Wolfe was not permitted to require him to perform field sobriety tests. We have reviewed Wolfe's testimony, at the suppression hearing, and we are satisfied not only that Wolfe had a reasonable, articulable suspicion to make the initial investigative stop, but also that Wolfe's decision to administer field sobriety tests was reasonable in light of the facts and circumstances known to Wolfe at that time. This included King's erratic driving, the odor of an alcoholic beverage on King's breath, and King's "glossed over," bloodshot eyes.
There is a logical progression involved in traffic stops resulting in DUI arrests. The facts and circumstances giving rise to a reasonable, articulable suspicion to make a brief, investigative stop need not be overwhelming, in view of the minimal intrusion represented by a brief investigative stop. Being required to perform field sobriety tests represents a somewhat greater intrusion upon ones liberty, and requires a more substantial basis for suspecting DUI. Finally, an arrest for DUI requires full-blown probable cause to make an arrest. See Statev. Eggleston (1996), 109 Ohio App.3d 217, at 227, wherein we approved procedure used by police in a sobriety checkpoint, in which drivers were stopped initially for less than thirty seconds, and were then required to submit to field sobriety testing only if the initial contact suggested that they might be under the influence.
In the case before us, Wolfe had a reasonable basis to require King to perform field sobriety tests. Although the performance of those tests represented some intrusion upon King's liberty, that intrusion was not great, and could have spared King the much greater intrusion represented by arrest, had King performed satisfactorily on those tests. We conclude that during each step leading up to King's eventual arrest, Wolfe acted reasonably.
King's second argument in support of his assignment of error is without merit.
 IV
King's third argument in support of his assignment of error is as follows:
 THE BAC BREATH TEST SHOULD HAVE BEEN SUPPRESSED BECAUSE THE SUBJECT WAS NOT GIVEN HIS MIRANDA RIGHTS INFORMING HIM OF HIS RIGHT TO CONSULT WITH AN ATTORNEY.
Statements obtained by law enforcement officers by a suspect during custodial interrogation will be suppressed unless the suspect has been advised of his rights pursuant toMiranda v. Arizona, supra.
However, a blood test has been held to be outside the scope ofMiranda v. Arizona, because it is not testimonial in nature.Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826. We cannot imagine any reason why a breathalyzer test would be any different in this respect. Because a breathalyzer test, and its results, are not in the nature of statements made by a suspect, there is no requirement that Miranda warnings be given before a breathalyzer test is administered.
King may also be arguing that the breathalyzer test results should be suppressed because he was not advised of his right to consult counsel in determining whether to consent to the test. Even a police officer's interference with a suspect's statutory right, pursuant to R.C. 2935.20, to consult with counsel before deciding whether to consent to a breathalyzer test does not justify invocation of the exclusionary rule. This is because a mere statutory violation, as opposed to a constitutional violation, does not justify the imposition of the exclusionary rule. Fairborn v. Mattachione (1995), 72 Ohio St.3d 345; State v.Griffith (1996), 74 Ohio St.3d 554. If a police officer'sinterference with a suspect's statutory right to consult with counsel cannot serve as a basis for invoking the exclusionary rule, perforce a police officer's mere failure to advise a suspect of his right to consult with counsel may not serve as a basis for invoking the exclusionary rule.
In his brief, under this argument heading, King argues that he was not observed for twenty minutes before the test was administered, as required by Appendix C of the Administrative Regulations of the Department of Health. King contends that State Trooper Jason Snodgrass, who administered the test, not only did not observe King for twenty minutes preceding the test, but that he testified that the park rangers who brought King in for testing said they had not observed him, either. King relies upon the following testimony of Snodgrass:
 Q. Okay, did you observe the defendant for a 20 minute period prior to asking him to blow into the machine?
A. I did not, no.
 Q. And had you inquired of the rangers whether or not they had done so?
 A. I inquired if they had observed him for 20 minutes, and asked if he had had anything in his mouth, for the 20 minutes prior to the test. They indicated they did not and I had them initial by the report form that they did, indicating that they had observed him for 20 minutes.
When this testimony is parsed with grammatical precision, it would seem to be saying that Snodgrass was told by the rangers that they had not observed King for the twenty minutes preceding the test, but got them to certify, in the report form, that they had done so. It seems unlikely in the extreme that this is what Snodgrass meant. If his testimony were given this construction, he would have been volunteering, in a response not required by the question, that he and the rangers conspired to falsify an official report. It seems far more likely that Snodgrass meant to say that the rangers indicated that they did not see King put anything in his mouth during the twenty minutes preceding the test, and certified the same by initialing the report form. That is evidently how the judge, who was present to see and hear Snodgrass testify, construed his testimony. It seems likely that both counsel also construed Snodgrass's testimony in that way, since neither counsel explored this subject further in direct or cross-examination. A volunteered admission that the testing officer conspired with the rangers to falsify an official report would certainly have led to follow-up questioning from both counsel.
It is not necessary to establish with mathematical certainty that the subject could not have ingested any substances during the twenty minutes preceding the test. As long as the State presents evidence reasonably supporting an inference to that effect, it is incumbent upon the defendant to present evidence that he did, in fact, ingest some substance before the test. State v. Adams
(1992), 73 Ohio App.3d 735, 740. We are satisfied that there is evidence in the record in the case before us, in the form of Snodgrass's testimony quoted above, that gives rise to a reasonable inference that King did not ingest any substances before taking the breathalyzer test.
King's third argument in support of his assignment of error is without merit.
 V
All of the arguments advanced by King in support of his assignment of error being without merit, his assignment of error is overruled, and the judgment of the trial court is Affirmed.
GRADY, P.J., and YOUNG, J., concur.