OPINION
{¶ 1} Defendant-appellant Michael A. Nichols appeals the May 25, 2001, denial of appellant's appeal to terminate an administrative license suspension and his June 29, 2001, conviction for Driving While Under the Influence, pursuant to R.C. 4511.19(A)(3), in the Municipal Court of Coshocton County, Ohio.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} A vehicle being driven by defendant-appellant Michael A. Nichols [hereinafter appellant] was stopped by the Coshocton County Sheriff Department on May 12, 2001. Appellant was charged with Driving While Under the Influence [hereinafter DUI], pursuant to R.C. 4511.19(A)(1) and (A)(3), Failure to Control, pursuant to R.C. 4511.202 and Underage Consumption, pursuant to R.C. 4301.69(E). Appellant submitted to a BAC Datamaster breath test. Prior to the test, the BAC Datamaster indicated that it would not zero itself. However, the officer conducting the test continued to use the machine and tested appellant. The test result was a .155 blood alcohol content [hereinafter BAC]. Pursuant to the test result, appellant was placed under an Administrative License Suspension [hereinafter ALS].
{¶ 3} At his initial appearance on the charges, appellant appealed the ALS. After a hearing, the trial court denied appellant's appeal and continued the ALS.
{¶ 4} On June 6, 2001, appellant filed a Motion to Suppress the BAC test result, arguing that the State was unable to provide a proper foundation to admit the evidence. Appellant contended that the Guth 34C Simulator and its thermometers have known temperature variances, tolerances and error factors making it impossible for the State to show that OAC 3701-53-04's mandate that the simulator operate at a temperature of 34 degrees Celsius +/- .2 degrees had been met. The Guth 34C Simulator mimics human breath and is used to test the Datamaster. That same day, June 6, 2001, appellant filed a second motion for discovery. This second, supplementary request for discovery specifically sought information regarding the Guth 34C Simulator and its thermometers.
{¶ 5} On June 15, 2001, the trial court denied appellant's suppression motion without hearing. Appellant filed a motion to reconsider on June 18, 2001. On June 19, 2001, the trial court granted the motion to reconsider, in part. The trial court granted a suppression hearing on the sole issue of whether the BAC Datamaster denoted an error existing immediately prior to appellant's test. However, the trial court denied the motion to suppress without hearing as to all other issues, including the issue regarding the accuracy of the Guth 34C Simulator.
{¶ 6} On June 29, 2001, prior to the suppression hearing, appellant pled no contest to DUI, 4511.19(A)(3), Failure to Control and Underage Consumption. The State dismissed the DUI charge brought under R.C. 4511.19(A)(1). By Judgment Entry filed June 29, 2001, the trial court found appellant guilty and pronounced sentence.
{¶ 7} It is from the conviction and sentence that appellant appeals, raising the following assignments of error:
 {¶ 8} I. "THE TRIAL COURT ERRED AS A MATTER OF LAW AND COMMITTED PLAIN ERROR WHEN IT DID NOT ACQUIT THE DEFENDANT/APPELLANT OF THE UNDERAGE CONSUMPTION OFFENSE UPON THE CONCLUSION OF THE STATE'S EXPLANATION OF CIRCUMSTANCES WHICH FAILED TO INCLUDE THE AGE OF THE DEFENDANT/APPELLANT, THE SAME BEING REQUIRED BY O.R.C. 2937.07."
 {¶ 9} II. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED THE DEFENDANT/APPELLANT'S MAY 12, 2001 BAC TEST RESULT AS EVIDENCE AGAINST HIM IN HIS ALS APPEAL."
 {¶ 10} III. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT'S SUPPRESSION MOTION WITHOUT A HEARING AND BEING BASED UPON REASONING NOT SUPPORTED BY FACTS IN THE RECORD AND UPON INCORRECT LAW."
 {¶ 11} IV. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT ORDER THE STATE TO PROVIDE THE DISCOVERY DEFENDANT/APPELLANT WAS ENTITLED TO AND SO MOVED ON JUNE 6, 2001."
 {¶ 12} V. "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED THE DEFENDANT/APPELLANT'S MAY 12, 2001 BAC TEST RESULT AS EVIDENCE AGAINST HIM FOR THE ALLEGED OFFENSE OF R. C. 4511.19(A)(3)."
 I
{¶ 13} In the first assignment of error, appellant argues that the trial court could not find appellant guilty following appellant's plea of no contest to the charge of underage consumption because the prosecutor failed to state appellant's age when stating the facts to the trial court. Appellant contends that appellant's age was an essential element of the charge and was required to be stated by the prosecutor.
{¶ 14} In order to obtain a conviction of a defendant who has pled no contest, the state must offer an explanation of the circumstances to support the charge. This explanation is sufficient if it supports all the essential elements of the offense. Chagrin Falls v. Katelanos (1988),54 Ohio App.3d 157, 159, 561 N.E.2d 992, 994; R.C. 2937.07[1]. A defendant who pleads no contest has a substantive right to be acquitted where the state's statement of facts fails to establish all of the elements of the offense. Cuyahoga Falls v. Bowers (1984), 9 Ohio St.3d 148,150, 459 N.E.2d 532, 534-535; State v. Gilbo (1994), 96 Ohio App.3d 332,337, 645 N.E.2d 69, 72. Criminal Rule 11(B)(2), which states that "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint . . .", does not supersede the requirement under R.C. 2937.07 that there be an explanation of circumstances. "Therefore, a no contest plea may not be the basis for a finding of guilty without an explanation of circumstances." Cuyahoga Falls v.Bowers, 9 Ohio St.3d at 150.
{¶ 15} The "evil" the Ohio Supreme Court proscribed in CuyahogaFalls v. Bowers was a trial court making a finding of guilty in a "perfunctory fashion." The Supreme Court reversed Bowers' conviction when the record reflected that the trial court considered nothing but a computer printout of the defendant's driving record to convict the defendant of DUI. In so doing, the Supreme Court distinguished the case of State v. Herman (1971), 31 Ohio App.2d 134, 286 N.E.2d 296. The Court noted that in Herman, the trial court read the officer's notes from the complaint to the defendant, "thereby providing the statutorily required explanation of circumstances." Bowers, supra., at 151; Herman, supra., at 140. It is sufficient if, by considering the trial court's comments on the record, the record demonstrates that the trial court based its findings on and relied upon the documentary evidence in the court's file in making its finding of guilt. State v. Judd (June 7, 2001), Licking App. No. 00-CA-00111, unreported, 2001 WL 1773876.
{¶ 16} In the case sub judice, the following discussion occurred subsequent to sentencing but before the conclusion of the hearing:
 {¶ 17} MR. SKELTON: Judge, just for the sake of appeal, I can't remember in my recitation of facts whether I put anything in there of the deputy determining that the defendant was under the age of 21. Does the court want to reopen that? Did it take judicial notice of his age?
 {¶ 18} THE COURT: I don't know if there was ever a question at this point. It's in the file.
{¶ 19} MR. SKELTON: It hasn't been questioned —
 {¶ 20} THE COURT: — Why is this becoming so difficult?
 {¶ 21} MR. SKELTON: I don't want to visit this —
 {¶ 22} THE COURT: — You don't recall saying that?
{¶ 23} MR. SKELTON: I don't recall saying that.
 {¶ 24} THE COURT: I thought you said it was five months before he was 21. Then I guess I can't say specifically whether that's what Mr. Blackwell said in chambers before we came out here or whether you said it on the record.
 {¶ 25} MR. SKELTON: If you can get Mr. Blackwell to waive that issue or we can go back and open it up.
 {¶ 26} THE COURT: Mr. Blackwell, what's your preference?
 {¶ 27} MR. BLACKWELL: I won't waive any issues, Your Honor.
 {¶ 28} THE COURT: All right. The court will take judicial notice of the information in the file in regard to the defendant's age. The court will also allow the state to reopen the presentation of evidence and proffer that the defendant's age is less than 21. Is that what you wish to do? And that he informed the deputy of that.
{¶ 29} MR. SKELTON: That's correct, Judge.
 {¶ 30} THE COURT: This is a sloppy way to do it, but it will get it done. Anything further?
{¶ 31} MR. SKELTON: No.
{¶ 32} MR. BLACKWELL: No, Your Honor.
{¶ 33} THE COURT: The Court will stand in recess.
{¶ 34} Transcript of Proceedings, pages 20-22.
{¶ 35} We agree that there was no explicit statement of appellant's age prior to finding appellant guilty. However, the record shows that the trial court prior to finding appellant guilty, was aware of and relied upon the court file which showed that appellant was underage, Transcript of Proceedings at page 21, supra. Further, the record shows that there had been a previous discussion in chambers during which appellant's counsel indicated to the trial court that appellant was under 21 years of age, Transcript of Proceedings, at page 21. Lastly, after finding appellant guilty, the trial court and appellant had a lengthy discussion as to where and how appellant managed to obtain beer and whether appellant was asked for I.D. prior to purchasing the beer. We conclude that the record shows that the trial court was aware of appellant's age through its review of the court's file.
{¶ 36} Further, when faced with this issue previously, this court noted that "[t]he statute does not prescribe a time or sequence within which the `explanation of circumstances' must take place. It is clear here that the trial judge and the defendant both had heard `explanation of circumstances' as to some of the charges at the time of the lengthy suppression hearing. We will not assume that either forgot them at the time of the judgment on suppression or at the time of accepting the plea, less than a month later. It is in this regard that we distinguish the holding in Bowers, supra." State v. Wendell (Jan. 14, 1991), Stark App. No. CA-8179, unreported, 1991 WL 6288.
{¶ 37} In this case, the trial court Judge had presided over the ALS Appeal Hearing held about a month before. At the ALS Appeal Hearing, the arresting officer testified that appellant admitted to being only 20 years of age at the time of the arrest. Transcript of Proceedings at page 4. Just as in Wendell, "the trial court and defendant had, in fact, the benefit of the record evidence of the circumstances surrounding the [charge]." Id.
{¶ 38} In conclusion, when the record is reviewed in toto, we must conclude that this was not a perfunctory finding of guilty and that the trial court considered a sufficient set of circumstances to support appellant's conviction.
{¶ 39} Appellant's first assignment of error is overruled.
 II
{¶ 40} In the second assignment of error, appellant contends that the trial court erred when it admitted the results of appellant's May 12, 2001, BAC test as evidence against appellant at the ALS appeal hearing. However, we find that this court does not have jurisdiction to hear this issue because an appeal was not timely filed.
{¶ 41} The administrative suspension of appellant's driver's license is a separate civil action which is unrelated to the criminal case charging appellant with driving while under the influence of alcohol. Ohio Bur. of Motor Vehicles v. Williams (1994),97 Ohio App.3d 779, 780-781, 647 N.E.2d 562 (citing Hoban v. Rice
(1971), 25 Ohio St.2d 111, 267 N.E.2d 311, paragraph one of the syllabus; and State v. Starnes (1970), 21 Ohio St.2d 38, 254 N.E.2d 675, paragraph two of the syllabus). "[A] trial court order denying an appeal of an administrative license suspension imposed by an arresting officer on behalf of the Registrar of the Bureau of Motor Vehicles is a final, appealable order." Id. at 781. Therefore, pursuant to App.R. 4(A), an appeal from that order must have been taken within thirty days of the trial court's judgment. The trial court's relevant judgment entry was filed on May 29, 2001. However, appellant did not file a notice of appeal until July 3, 2001. Thus, the notice of appeal was untimely. Therefore, this court has no jurisdiction to consider any issue regarding the trial court's determination on appellant's appeal of the ALS suspension.
{¶ 42} Appellant's second assignment of error is overruled as untimely.
 IV
{¶ 43} In the fourth assignment of error, appellant asserted that the trial court committed reversible error when it did not order the State to provide appellant the documents and information requested in appellant's second request for discovery. However, appellant's brief did not address this assignment of error. Appellee, the State of Ohio, argues that this court should deny the assignment because appellant has not addressed the assignment of error in the brief and that appellee is not familiar with appellant's allegations.
{¶ 44} Appellate Rule 16(A)(7) states, in relevant part, that an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." We find no argument on this issue in appellant's brief. Appellate Rule 12(A)(2) states that "the court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
{¶ 45} Although appellant addresses the assignment of error in his reply brief, we find that placing the argument in the reply brief is not a substitute for complying with App.R. 16(A)(7). First, the Appellate Rules expressly state that the argument must be in the initial brief filed by appellant. Second, App.R. 16(C) states that a reply brief is to "reply to the brief of the appellee." New assignments of error cannot be raised in a reply brief. Sheppard v. Mack (1980), 68 Ohio App.2d 95,427 N.E.2d 522. Lastly, appellee was denied the opportunity to respond to appellant's arguments. Therefore, this court need not address appellant's fourth assignment of error.
{¶ 46} Appellant's fourth assignment of error is overruled.
 III, V
{¶ 47} In the third assignment of error, appellant argues that the trial court erred when it failed to conduct a hearing on appellant's motion to suppress and when it denied appellant's motion to suppress. In the fifth assignment of error, appellant argues that the trial court erred when it admitted appellant's BAC test as evidence against appellant in his conviction under R.C. 4511.19(A)(3). We will address these assignments of error together, as did appellant.
{¶ 48} In his motion to suppress, appellant claimed that the State of Ohio failed to meet the requirements of OAC 3701-53-04. OAC 3701-53-04
requires that a senior operator perform an instrument check on approved evidential breath testing equipment and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with an appropriate instrument checklist. As part of the BAC Datamaster instrument checklist, the check is to be made "with the simulator at 34 degrees +/-.2 degrees Celsius." Appellant argued that the State could not show that the Guth 34C breath simulator, used to test the BAC Datamaster breath testing instrument, was operating at 34 degrees +/- .2 degrees Celsius, as is required. Appellant asserted that because of variances built into the simulator and variances built into the thermometers used in the operation of the simulator, and because the operator was not required to identify the exact temperature reading from the thermometer at the time of testing or which of the two thermometers was read, there is no way to determine whether or not the simulator was operating at the required 34 degrees +/- .2 degrees Celsius when used to test the BAC Datamaster.
{¶ 49} Appellant argues that the simulator operator does not record the actual temperature of the breath simulator on the checklist, but, rather simply writes down a check mark if the temperature he/she reads from the thermometer of the simulator is somewhere between 33.8 and 34.2 degrees Celsius. The appellant sets forth that there are three things wrong with this procedure. The first is that the thermometers on the simulator operate within a range of accuracy. The mercury thermometer on the breath simulator in this case was .02 degrees Celsius in error on April 28, 1999. In addition, this thermometer may lose accuracy over time, and has a built-in variance of .01 degrees Celsius. The dial thermometer is less accurate and can only be read to the nearest .5 degree Celsius. Therefore, the thermometer readings may not necessarily reflect the actual temperature of the simulator. Second, the simulator operator does not record the exact temperature he/she reads from the thermometer but only records whether it was between 33.8 and 34.2 degrees Celsius. Third, the operator does not record which thermometer he/she reads when checking the temperature. It is arguable that if the operator recorded the exact temperature reading and recorded which thermometer this reading was taken from, and if that thermometer's accuracy could be tested, then the actual temperature at which the simulator was operating could be calculated. But, since this information is not available in this case, appellant argues that the exact temperature of the breath simulator is unknown. Therefore, appellant argues, the State cannot establish the accuracy of the Datamaster in this case, and the BAC test done on the appellant with this Datamaster should be suppressed. We disagree.
{¶ 50} A brief synopsis of the process to test appellant's breath and requirements to admit that test as evidence is necessary. In the case sub judice, a BAC Datamaster was used to determine appellant's BAC. The BAC Datamaster is one of several evidential breath testing instruments approved for use in Ohio. See OAC 3701-53-02(A)(4). To ensure the accuracy of the BAC Datamaster, OAC 3701-53-04(A) dictates that an instrument check of a BAC Datamaster must be conducted by a senior operator within 192 hours of the last instrument check. A checklist must be followed when conducting the instrument check. The senior operator conducting the instrument check is to mark off the checklist steps which have been met. During the instrument check, a "simulator" is used to simulate a person's breath. An instrument check solution containing aknown level of alcohol is used to provide the alcohol to the simulated breath. In order to conduct the test in accordance with the procedures outlined in OAC 3701-53-04(A) and to achieve proper results, the simulator must simulate human breath by being at 34 degrees +/- .2 degrees Celsius. The checklist requires the senior operator to confirm that the simulator was 34 degrees +/- .2 degrees Celsius, but does not require that the exact temperature be recorded. A BAC Datamaster passes the instrument check if it registers a test reading within the target value range of at or within five one-thousandths (0.005) grams of the known instrument check solution's known target value of grams of alcohol per 210 liters. In other words, based on the information provided by the manufacturers of the alcohol test solution, the BAC Datamaster should register a certain reading if the Datamaster and the simulator are working correctly.
{¶ 51} Evidence of alcohol concentration in a person's breath which are analyzed in accordance with the procedures provided in the OAC are admissible. R.C. 4511.19(D); See OAC 3701-53-02 and 3701-53-04. "Absent a showing of prejudice, the result of alcohol concentration tests administered in substantial compliance with Ohio Adm. Code 3701-53-04 are admissible." State v. Krotine (July 9, 1999), Erie App. No. E-98-097, unreported, 1999 WL 461758 (citing State v. Plummer (1986),22 Ohio St.3d 292, 490 N.E.2d 902, syllabus; State v. Adams (1992),73 Ohio App.3d 735, 741, 598 N.E.2d 176).
{¶ 52} Returning to appellant's arguments, we find that the trial court did not err in denying appellant an oral hearing on those issues nor in denying appellant's motion to suppress. A hearing is not mandated to be held on every motion to suppress. See Crim.R. 12(F).[2] "In order to require a hearing on a motion to suppress evidence, the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided. (Crim.R. 47[3] and Xenia v. Wallace (1988),37 Ohio St.3d 216, 524 N.E.2d 889, construed and followed.)." State v.Shindler, 70 Ohio St.3d 54, 1994-Ohio-452, 636 N.E.2d 319, at syllabus. The accused's legal and factual allegations must be such that they would warrant relief. Solon v. Mallion (1983), 10 Ohio App.3d 130, 131,460 N.E.2d 729. For the reasons to be discussed, we find appellant failed to state legal and factual allegations sufficient to warrant relief.
{¶ 53} To warrant relief an accused must state sufficient facts or law to demonstrate that the State failed to substantially comply with the applicable regulations. Appellant essentially argues that the State failed to substantially comply with the applicable regulations when it failed to record the actual temperature of the Guth 34C Breath Simulator. We find that that allegation alone, when all other testing procedures were complied with, is insufficient to warrant relief.
{¶ 54} Appellant does not contend that a senior operator failed to timely conduct an instrument check per OAC 3701-53-04(A). There are no allegations that the senior operator failed to complete the required checklist nor that the thermometer used did not or could not read 34 degrees +/- .2 degrees Celsius. Further, the instrument check resultswere within the permitted target range. Therefore, we find that appellant failed to present any factual or legal allegations that would form a basis to find that the State failed to substantially comply with OAC 3701-53-04.
{¶ 55} This court notes that when the instrument check was conducted using the Guth 34C before and after appellant's BAC test, the BAC Datamaster returned test results that indicated the BAC Datamaster was accurately testing samples. Pursuant to OAC 3701-53-04, under such circumstances a BAC Datamaster is deemed properly calibrated for use. Generally, only when both the simulator and breath testing instrument are working properly will the instrument check provide a result within the allowable target value range. We concede that if the Datamaster is somewhat inaccurate in one direction and the breath simulator is somewhat inaccurate in another direction, then these offsetting problems could result in a falsely "accurate" test result of the Datamaster. A simple illustration will make this point: many possible number combinations can add up to the number four including, but not limited to, three plus one, negative two plus six and 3.125 + .875. However, we find that this risk seems minimal and is reduced by the requirement that the simulator be set at a temperature which registers on its thermometer at 34 degrees +/- .2 degrees Celsius. The manual for the Guth 34C Breath Simulator states that it is an electronically temperature controlled, water-alcohol instrument for the purpose of providing a precise calibration standard. It is designed to maintain a water-alcohol solution at 34 degrees Celsius +/- .05 degrees Celsius, and needs about ten minutes to warm up. The Director of Health could have required a checklist to make sure the simulator was functioning properly. The Director of Health did not do that. In fact, there was a revision to the regulations that removed previous requirements that the manufacturer's recommendations for calibration for simulators be followed. Those provisions were deleted from the OAC, effective July 7, 1997. State v. Krotine (July 9, 1999), Erie App. No. E-98-097, unreported, 1999 WL 461758. Therefore, we conclude that the Director of Health deemed that the Datamaster and simulator are working correctly when the Datamaster's test results match those which the manufacturers of the alcohol test solution set forth.
{¶ 56} We acknowledge that one could argue then why does the Director of Health continue to require the temperature of the simulator to be verified on the Datamaster checklist. We find that that is necessary for a correct test of the Datamaster, because that requirement does limit the range in which the simulator must operate. We find that the Guth 34C Breath Simulator is electronically pre-set to operate at 34 degrees +/- .05 degrees Celsius. The manual for the Guth 34C sets forth the variances in each thermometer and we presume the Director of Health is aware of the contents of that manual. We also presume that the Director of Health knows that the temperature of the Guth 34C will be read from one of these thermometers and anticipated such in formulating the checklist. We find that the State is in substantial compliance with the OAC when the senior operator reads a temperature from one of the thermometers on the simulator that is between 34 degrees +/- .2 degrees Celsius, and records on the checklist a check mark next to the phrase "with the simulator at 34 degrees +/- .2 degrees Celsius, and the ultimate reading from the Datamaster reads within .005 grams of the test solutions number.
{¶ 57} Appellant has also failed to show prejudice. Appellant stated no facts or law to indicate that the Guth 34C used on the BAC Datamaster in question was not providing accurate temperature readings. When the Guth 34C was used to conduct instrument checks before and after appellants' BAC test, the BAC Datamaster returned results within the required target value range. According to records appellant submitted to the trial court, instrument checks were performed on the BAC Datamaster in question on May 8, 2001 and May 15, 2001, respectively. Appellant's BAC test was conducted on that machine on May 12, 2001. The records submitted by appellant show that the May 15, 2001 instrument check results were within the target value range and give no indication that the instrument check results from May 8, 2001 were not within the target value range. Further, appellant raised no issue as to whether the BAC Datamaster in question failed the May 8, 2001 and May 15, 2001 instrument checks. Therefore, this court presumes that the BAC Datamaster passed those instrument checks. Appellant has not presented facts and law to show that his test results were inaccurate.
{¶ 58} In conclusion, we find that the trial court did not err when it denied appellant a hearing on the motion to suppress regarding the issues which challenged whether the State had complied with the OAC regarding the temperature of the Guth 34C simulator. Further, we find the trial court did not err in denying appellant's motion to suppress and using the appellant's BAC Datamaster test results as evidence against appellant.
{¶ 59} Appellants' third and fifth assignments of error are overruled.
{¶ 60} The judgment of the Municipal Court of Coshocton County, Ohio is affirmed.
By EDWARDS, J. GWIN, P.J. and FARMER, J. concur
 JUDGMENT ENTRY
{¶ 61} For the reasons stated in the Memorandum-Opinion on file, the judgment of the Coshocton County Municipal Court is affirmed. Costs to appellant.
[1] R.C. 2937.07 states the following, in relevant part: "If the plea be "no contest" or words of similar import in pleading to a misdemeanor, it shall constitute a stipulation that the judge or magistrate may make a finding of guilty or not guilty from the explanation of circumstances, and if guilt be found, impose or continue for sentence accordingly."
[2] "The court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means." Crim.R. 12(F).
[3] "An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit. To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition." Crim.R. 47.