JOURNAL ENTRY AND OPINION
Defendant-appellant Robert A. McAuley (McAuley ; d.o.b. April 22, 1944) appeals from his jury trial conviction of Driving Under the Influence in violation of R.C. 4511.19(A)(1). For the reasons adduced below, we affirm.
A review of the record on appeal indicates that on December 17, 1998, at approximately 3:18 a.m., McAuley was driving his 1988 Ford Escort westbound on Interstate 90.
Rocky River Patrolman David Wagner, testified for the prosecution and stated that he had made approximately one-hundred-and-fifty driving under the influence arrests in his five-and-one-half years of service. At the time of the offense, Officer Wagner was working along westbound Interstate 90 when he observed McAuley's vehicle leave its lane of travel two times. (Tr. 18.) The officer activated his overhead flashing lights and siren and pursued the offender. The offending vehicle did not stop immediately, but pulled over after approximately a half mile, almost, but not yet, outside the Rocky River city limits. (Tr. 18.) The officer pulled up behind the offender and approached the driver's door. The officer, shining his flashlight upon the subject, immediately noticed that the driver's eyes were bloodshot and glassy. When the driver was asked for his driver's license and registration, the officer observed a moderate smell of alcohol on the driver's breath, the driver's movements as being slow and lethargic, and the driver's speech as mumbled, thick tongued * * * all indicators of alcoholic influence. (Tr. 18-20.) Based on these observations indicating the influence of alcohol, and Officer Rusinko having just arrived on the scene as back up, Officer Wagner asked the driver to exit the vehicle so as to conduct field sobriety tests. According to Officer Wagner, McAuley failed the three field sobriety tests which were administered.[1] Officer marked McAuley as being uncooperative during the walk and turn test because McAuley was not listening to, and following, the instructions as they were given; instead, McAuley seemed to be staring at Officer Rusinko. McAuley, when asked, denied having had anything to drink. (Tr. 35.) McAuley was placed under arrest and transported to the Rocky River police station.
At the police station, Officer Wagner, who is certified to give such tests (Tr. 37), observed McAuley take a breathalyzer test administered by Officer Gouch. The breathalyzer test was attempted three times. (Tr. 37.) Officer Wagner thought McAuley was trying to defeat the test each time by not blowing hard enough into the machine, depriving the machine of a sufficient sample of breath. The test results were incomplete. (Tr. 38-42.) Officer Wagner specifically stated that these events happened in Cuyahoga County, Ohio. (Tr. 29.) While at the police station, a computerized check of LEADS (aka Law Enforcement Automated Data System) revealed that McAuley had three prior convictions for driving under the influence within a six-year period of the current arrest.
Rocky River Patrolman Nick Rusinko, testifying for the prosecution, stated that he spoke with McAuley at the scene on the highway and corroborated the testimony of Officer Wagner.
Rocky River Patrolman Gerald Gouch, an officer of thirty years service, testified for the prosecution and corroborated the testimony of Officer Wagner and gave detailed testimony concerning the breathalyzer testing at the police station. Officer Gouch is the senior operator in charge of the BAC Datamaster breathalyzer machine at the police station in question, and is charged with maintaining the machine, calibrating the machine on a weekly basis and testing the machine, and training other officers in the use of the machine. The records for the machine indicate that it was calibrated by Officer Gouch on the day prior to the arrest of McAuley. The three tests administered to McAuley were performed as follows: (1) started at 3:38 a.m., test at 4:02 a.m., with an incomplete result at 4:05 a.m.; (2) started at 4:05 a.m., test at 4:23 a.m., with an incomplete result at 4:26 a.m.; (3) started at 4:26 a.m., test at 4:29 a.m., refusal noted at 4:32 a.m. The first and second tests were not completed due to an inadequate sample by the subject. The third test was not completed because of the subject again not giving a sufficient sample, so the Officer marked that the subject refused to perform the test because the subject was not complying with instructions on how to do the test. (Tr. 65-66, 107-108.)
McAuley testified on his own behalf and admitted to having three driving under the influence convictions prior to the case sub judice. According to the witness, his driver's license was under suspension at the time of the offense, but he had work privileges and permission to drive to and from his Alcoholics Anonymous meetings. McAuley claimed that he was coming from out of work at Airborne Express near Cleveland Hopkins Airport and had stopped to pick up some groceries prior to being pulled over by the police. (Tr. 95.) McAuley stated that he worked from 11 p.m. to 7:30 a.m., and went to get groceries at the 24-hour Finast store at Kamms Corners. McAuley denied drinking alcohol, and testified that he was on his way to his house when he was stopped. (Tr. 97.) He stated that he pulled over almost immediately after he saw the red flashing lights of the officer. He also stated that he blew into the breathalyzer machine as hard as he could each time and did not try to subvert that testing. McAuley next testified that he believed that he passed the field sobriety tests, and that he was not uncooperative with the police. (Tr. 112-114.) Further in his testimony, McAuley claimed that he left work that morning at 1:00 a.m. (Tr. 114.)
On cross-examination, McAuley admitted to having had six convictions for driving under the influence, dating back to 1984.[2]
McAuley next admitted that he did not know when Officer Wagner turned on the emergency flashing lights. (Tr. 122.)
The final witness to testify for the defense was Ms. Brenda Boyd. Ms. Boyd is an adult probation officer with the trial court, and McAuley had been part of her probationer caseload since July 17, 1998. While under her supervision, McAuley has never tested positive for drugs or alcohol. Prior to the offense at issue, McAuley was last tested by her office for compliance on December 9, 1998.
The jury returned a verdict of guilty and the trial court sentenced McAuley to sixty (60) days imprisonment and a fine of $1,500.00.
This appeal presents five assignments of error for review.
 I THE PLAINTIFF APPELLEE FAILED TO PROVE VENUE BEYOND A REASONABLE DOUBT.
Appellant argues that it was not proven that the offense was committed within Cuyahoga County, Ohio. This argument is flapdoodle. The record clearly indicates that the prosecution asked Officer Wagner whether the offense occurred in Cuyahoga County, and the Officer answered in the affirmative. (See Tr. 29.)
The first assignment of error is overruled.
 II THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN ADMITTING EVIDENCE OF DEFENDANT-APPELLANT'S PRIOR CONVICTIONS FOR DRIVING UNDER THE INFLUENCE.
In this assignment, appellant argues that it was error for the court to admit into evidence McAuley's three earliest convictions for driving under the influence from 1984, 1988, and 1992. This argument lacks merit. The record reflects that during McAuley's direct examination by defense counsel, McAuley was asked whether he had three driving while under the influence convictions. In response to this query, McAuley answered Yes. (See Tr. 91.) This questioning opened the door to the prosecutor's permissible cross-examination of McAuley's veracity regarding additional, and earlier, convictions for driving under the influence. (See Tr. 117-119.) It is well settled that "[a] party will not be permitted to take advantage of an error which he himself invited or induced." Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20. The prosecution may properly explore a line of questioning initiated by the defendant. State v. Connor (Mar. 9, 2000), Cuyahoga App. No. 75773, unreported, 2000 WL 263397, at 5, citing State v. Keith (Mar. 13, 1997), Cuyahoga App. No. 69267, unreported.
The second assignment of error is overruled.
 III THE TRIAL COURT'S FINDING OF GUILTY FOR DRIVING UNDER THE INFLUENCE, A VIOLATION OF R.C. 4511.19(A)(1), IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE DEFENDANT-APPELLANT WAS CHARGED WITH A REFUSAL TO SUBMIT TO THE BREATH TEST MERELY BECAUSE THE RESULTS OF THE TESTS WERE INCOMPLETE.
The Ohio Supreme Court in State v. Thompkins (1997), 78 Ohio St.3d 380,387 quoting Black's Law Dictionary (6 Ed. 1990) 1433, noted that:
 * * * [w]eight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief. (Emphasis in original.)
The Thompkins court approved the test to be applied as set forth in State v. Martin (1983), 21 Ohio App.3d 172:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
The resolution of this assignment hinges on whether McAuley refused to take the breathalyzer test. As stated in Andrews v. Turner (1977), 52 Ohio St.2d 31, paragraph one of the syllabus:
 1. The fact of refusal to take the chemical test provided for in R.C. 4511.191 appears whenever a preponderance of all the evidence shows that the person who was given the request and advice in the statutory manner and form has thereafter conducted himself in such a way as to justify a reasonable person in the position of the requesting officer to believe that such requested person was capable of refusal and manifested unwillingness to take the test.
Accordingly, failure to cooperate with instructions or other actions obstructing the testing process may be construed as a refusal. Andrews, supra. Thus, a court may infer a test refusal if it believes that the defendant made a bad faith attempt to blow hard enough to preclude an adequate reading.
In the case sub judice, the evidence indicates to a reasonable person that McAuley, contrary to instructions, intentionally failed to provide an adequate breath sample in three attempts. This conduct constitutes a refusal to take the test.
The third assignment of error is overruled.
 IV THE TRIAL COURT'S FINDING OF GUILTY FOR DRIVING UNDER THE INFLUENCE, A VIOLATION OF R.C. 4511.19(A)(1), IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE OFFICER CONDUCTING THE BREATHALYZER TESTS DID NOT COMPLY WITH THE TWENTY MINUTE OBSERVATION RULE AS DIRECTED BY THE DEPARTMENT OF HEALTH REGULATIONS.
R.C. 3701.143 authorizes the Director of Health to promulgate regulations concerning chemical analysis of a person's blood, urine, breath, or other bodily substances for the presence of alcohol. These regulations are codified in Ohio Adm. Code3701-53-02, and operate to eliminate the possibility that the test result is a product of anything other than the subject's deep lung breath. State v. Smith (1977), 52 Ohio St.2d 187. Strict compliance with these regulations are not required; the courts require substantial compliance. City of Rocky River v. Papandreas (Mar. 23, 2000), Cuyahoga App. No. 76132, unreported, 2000 WL 301080, at 2, citing State v. Plummer (1986), 22 Ohio St.3d 292.
Appellant notes, correctly, that the purpose of the observation rule is to ensure that nothing is orally ingested by the subject during that twenty-minute period. Ohio Adm. Code3701-53-02(B), Appendices A-F. However, appellant argues that he was observed for twenty minutes only prior to the first test attempt, and that this twenty-minute observation period should have been applied to all three test attempts, thereby invalidating the test results.
First, whether McAuley was observed for twenty minutes or not prior to the second and third test attempts is irrelevant, given his failure to provide an adequate breath sample on each occasion. His obstructive actions prevented any of the tests to render a mathematical result.
Second, the evidence demonstrated that McAuley did not ingest any substance at the police station, let alone between the first and subsequent testings. Thus, there is no meaningful possibility that the additional * * * wait without ingestion of any additional substance could have affected the validity of the retest. City of Rocky River v. Papandreas, supra, 2000 WL 301080, at 2. Accordingly, the police had no reason to wait another twenty minutes before administering the breath test. Id., at 3.
The fourth assignment of error is overruled.
 V DEFENDANT-APPELLANT WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION DUE TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR COUNSEL'S FAILURE TO (1) FILE A MOTION TO SUPPRESS EVIDENCE OBTAINED THROUGH AN ILLEGAL STOP OF APPELLANT'S VEHICLE, (2) FILE A MOTION TO SUPPRESS APPELLANT'S ALLEGED REFUSAL TO SUBMIT TO THE BREATHALYZER TEST, AND (3) FILE A MOTION TO SUPPRESS THE RESULTS OF APPELLANT'S BREATHALYZER TESTS AS THE OFFICER CONDUCTING THE TESTS FAILED TO COMPLY WITH THE TWENTY MINUTE OBSERVATION RULE AS DIRECTED BY THE DEPARTMENT OF HEALTH.
The standard of review for an allegation of ineffective assistance of trial counsel was recently stated by this court in State v. O'Linn (Mar. 16, 2000), Cuyahoga App. No. 75815, 2000 WL 283086, at 7-8:
 To warrant reversal on the grounds that he was not provided effective assistance of counsel, appellant must meet the two-pronged test set forth in Strickland v. Washington (1984), 466 U.S. 668:
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showing, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable. See, also, State v. Lytle (1976), 48 Ohio St.2d 391, 396-397 (adopting virtually the same test for Ohio). To determine whether counsel's performance was deficient, the court must inquire whether the attorney provided reasonably effective assistance, considering all the circumstances. State v. Loza (1994), 71 Ohio St.3d 61, 83, citing Strickland.
Appellant must show that counsel's performance fell below an objective standard of reasonableness. Id. In this regard, a properly licensed attorney is presumed to be competent; thus, judicial scrutiny of an attorney's performance must be highly deferential. Strickland, supra at 689; State v. Seiber (1990),56 Ohio St.3d 4, 11. Counsel's strategic decisions and trial tactics will not support a claim of ineffective assistance. State v. Clayton (1980), 62 Ohio St.2d 45, 48-49. To show that appellant has been prejudiced by counsel's deficient performance, appellant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
The principal argument advanced by this assignment is that the initial investigatory stop of McAuley's vehicle was unreasonable. The following was stated by this court regarding an investigatory stop premised on a driver's erratic operation of a motor vehicle:
 In Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 899, the United States Supreme Court held that the Fourth Amendment to the United States Constitution is not offended when a police officer, based upon his "reasonable suspicion" that criminal activity is or may be occurring, stops a suspect for questioning. Such conduct, termed an "investigatory stop" does not violate the Ohio Constitution even though a police officer lacks probable cause to arrest the suspect.
State v. Medlar (1994), 93 Ohio App.3d 483, 638 N.E.2d 1105, citing to State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. In assessing his conclusions, the officer must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion. Id. at 87,565 N.E.2d 1271.
Courts have concluded that an objective and particularized suspicion that criminal activity is afoot must be based on the entire picture — a totality of the circumstances.
Andrews, supra, citing to State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489.
These circumstances are to be viewed through the eyes of the reasonable and prudent officer on the scene who must react to events as they unfold. Andrews, supra.
City of Richmond Heights v. Williams (Nov. 25, 1998), Cuyahoga App. No. 73500, unreported, 1998 WL 827594, at 2.
The Supreme Court of Ohio has also held that stops based on minor traffic violations do not violate the Fourth Amendment. In Dayton v. Erickson (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, the syllabus held:
 Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer has some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.
In the case sub judice, Officer Wagner had probable cause to believe that McAuley's vehicle was committing a traffic offense (Weaving, see R.C. 4511.33). [W]eaving, even within a single lane of traffic, can justify an investigatory stop." State v. Williams(1993), 86 Ohio App.3d 37, 43. Based on Officer Wagner's observations of McAuley's vehicle leaving, and returning to, its lane of traffic on two occasions in the early morning hours, the investigative stop was justified.
The remaining subarguments of ineffective assistance of trial counsel are premised on appellant's belief that assignments of error III and IV, supra, have merit. Since these assignments of error have been overruled, these subarguments likewise fail.
The fifth assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
 _________________________ SWEENEY, JAMES D., J.
ANNE L. KILBANE, J., and JAMES M. PORTER, J., CONCUR.
[1] The three tests included the following: (1) horizontal gaze nystagmus, which measures the involuntary jerking of a subject's eyes as the eyes track an object from left to right; (2) walk and turn which measures a subject's balance as the subject attempts to walk along a straight line heel-to-toe; and, (3) distinct nystagmus, which measures the involuntary jerking of a subject's eyes as an object is moved out to a 45 angle from the centerline of the face.
[2] McAuley, when questioned by the prosecution on cross-examination, admitted to convictions for driving under the influence in 1984, 1988, 1992, 1995, 1997, and 1998.