THE STATE OF OHIO, APPELLANT, *v.* STEELE, APPELLEE.

(No. 77-206—Decided December 21, 1977.)

188

Mr. John E. Shoop, prosecuting attorney, and Mr. Michael D. Gelety, for appellant.

Mr. Maury E. Lederman, for appellee.

CELEBREZZE, J. Appellee was convicted of driving while intoxicated, contrary to R. C. 4511.19. That section states

that in order to determine the concentration of alcohol in the blood, an individual's "bodily substance shall be analyzed in accordance with methods approved by the director of health." Regulations promulgated by the Director of Health, setting out proper testing methods, are contained in Chapter HD-1, Ohio Department of Health, Alcohol Testing, Approval and Permit Program, one of which requires that the test administrator: "Observe subject for twenty minutes prior to testing to prevent oral intake of any material."

On appeal to this court the sole issue presented is the proper interpretation to be given to this requirement of observation.

In ruling that the breathalyzer test results were inadmissible, the appellate court below concluded as follows:

"In our opinion during the period from the stop to the Post when the officer and * * * [appellee] were in the vehicle in the front seat with the dome light on, the officer was observing * * * [appellee]. However, while the officer was exiting the vehicle and walking around the vehicle he was not observing * * * [appellee]. Finally, while in the patrol post, even though there were a few seconds when the officer averted his gaze, the requirement of observing was met.

"In summary, we are of the opinion that the requirement of observing the person tested was not met during the period that the officer was exiting his vehicle and was walking around to escort * * * [appellee] into the Post."

We are constrained to disagree with the analysis of the Court of Appeals.

The primary argument advanced by appellant, the state of Ohio, is that the requirement of a 20-minute observation period should be accorded a reasonable and logical interpretation, and that although it is a rule of construction that laws (and regulations) be strictly interpreted against the state, and liberally in favor of the accused, this rule cannot be applied in an arbitrary manner.

Appellant correctly notes that the only evidence before the trial court was the uncontroverted testimony of

the testing officer that appellee was "observed" for the requisite period of time, during which period appellee did not ingest any material. In addition, the officer stated that appellee did not, to his knowledge, regurgitate while in his custody. Appellant therefore contends that the purpose behind the observation period was accomplished— appellee was prevented from ingesting, within 20 minutes prior to administration of the test, any material which might cause an inaccurate test result.

Appellee, on the other hand, argues from an academic position, as the following excerpt from his brief reveals:

"It can hardly be disputed that something small may be ingested in a matter of a second or two, and/or that a person may regurgitate slightly without actually expelling anything from his mouth."

However, appellee presented no evidence at trial in support of either of these arguments.

There is a dearth of Ohio case authority considering the purpose behind the 20-minute observation period, and what constitutes compliance with this particular requirement. However, other state courts have answered such questions in the course of reviewing similar requirements of pre-test observation.

In *People* v. *Crawford* (1974), 23 Ill. App. 3d 398, 403, 318 N. E. 2d 743, 748, the court examined the appellant's claim that there was not compliance with the mandatory observation period. In Illinois, the Department of Public Health required a "continuous observation of the subject for at least 20 minutes prior to collection of the breath specimen, during which period the subject must not have ingested alcohol, food, drink, regurgitated, vomited or smoked." In rejecting appellant's claim the court stated:

"We find no merit in defendant's contentions concerning alleged violations of the statute and rules promulgated by the Department. He first contends that there was a lack of compliance with Rule 3.01(b) requiring continuous observation of the subject for 20 minutes prior to the specimen. We note, however, that Officer Meeker testi-

fied that he observed defendant for the requisite 20 minutes prior to the test and that during that period defendant did not eat, smoke, regurgitate or drink. Defendant further contends that the test results were invalid under Rule 3.01(b) because no one observed whether or not defendant had belched during the 20-minute period. We first note that Rule 3.01(b) does not prohibit belching during the prescribed period. Nevertheless, even if it were prohibited under a quite liberal interpretation of the word 'regurgitation,' there is absolutely no testimony here that defendant did, in fact, belch during the critical 20-minute period in question."

In *State* v. *Baker* (1960), 56 Wash. 2d 846, 855, 355 P. 2d 806, the appellant argued that the breathalyzer test results were inadmissible due to inadequate observation time before the test. The Supreme Court of Washington reaffirmed the purpose for the observation period: "* * * [The breathalyzer machine operator's] testimony further establishes that the subject must be kept under observation for at least fifteen minutes *to ensure that he has not taken anything alcoholic to drink during that period* and to allow any alcohol present in the mouth to be absorbed by the skin." (Emphasis added.) The *Baker* court did, however, rule that the test results were inadmissible, due to inadequate observation, for the following reason:

"* * * There is evidence tending to show that appellant may have had an absorbent poultice and a packing impregnated with a medicine (toothache drops) containing alcohol in a cavity in his tooth at the time he took the test. Furthermore, there is evidence tending to show that appellant may have taken some cough medicine containing forty-five to forty-six percent alcohol within fifteen minutes of the test."

Finally, in upholding the admissibility of breathalyzer test results, the Supreme Court of Alaska, in *Wester* v. *State* (Alaska 1974), 528 P. 2d 1179, 1184, reviewed the holding in *Baker, supra,* commenting as follows:

"*Baker*, significantly, was a first impression breath-

alyzer case in Washington. The court there noted that, since the breathalyzer was in its embryonic stage and its results were thought to be unreliable except under rigid testing circumstances, it would require prima facie evidence on each of four points in order to allow into evidence the results of the test. In imposing a stringent 15-minute requirement for admissibility, the court was influenced by a number of factors: an obvious hesitancy to embrace the breathalyzer, defendant's own testimony that he had been taking and indeed had medicine in his mouth prior to the administering of the test and the possibility on the record that the observation period may have been only 14 minutes.

"While we do not wish to undermine the status of the observation period as a necessary foundational fact in the introduction of the breathalyzer test results, we do conclude that a rigid standard of proof of this foundational fact is unnecessary.

"* * * Wester here has indeed demonstrated the factual effect of ingestation during the quarter-hour observation period, but there is no evidence that appellant had eaten or drunk (or corrupted in any other way the test results) within this period.

"* * * [I]t is inferable from the record that Wester was under adequate observation by the arresting officer for a sufficient period of time. The mere assertion that ingestion was hypothetically possible ought not to vitiate the observation period foundational fact so as to render the breathalyzer test results inadmissible."

We find the reasoning of the Alaska high court in *Wester, supra,* to be persuasive. In the instant cause the prosecution introduced uncontroverted evidence which constituted a solid foundation for the admission of the damaging breathalyzer test results. In our opinion appellant established that the breathalyzer test was properly administered, in accordance with methods approved by the Director of Health, the hypothetical assertions by appellee notwithstanding.

Accordingly, the judgment of the Court of Appeals must be reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.