**State v. Ray**
*[Cite as 8 AOA 65]*

*Case No. 2657*
*Clark County, (2nd)*
*Decided November 27, 1990*

*Albert Stewart, Jr., Springfield City Prosecutor, 50 E. Columbia Street, Springfield, Ohio 45502, Attorney for Plaintiff-Appellee.*

*Shawn A. Thomas, Clark County Public Defender's Office, 50 E. Columbia Street, Springfield, Ohio 45502, Attorney for Defendant-Appellant.*

BROGAN, J.

Appellant, James D. Ray, appeals from the decision rendered by the Clark County Municipal Court in which he was convicted of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A) (3).

On March 2, 1989, Ray was stopped by Officers Brian Radanovich and John Keys of the Springfield Police Department, after they observed him turn west on West Columbia Street which is a one way street traveling east. While speaking with Ray, the officers detected a strong odor of alcohol about his person and further, they noticed that Ray's speech was slurred and his eyes were red and watery. A field sobriety test was conducted which Ray had difficulty in completing. Ray was placed under arrest and was taken to the Clark County Jail where he voluntarily submitted to a breath test which resulted in an alcohol concentration level of .168 grams per 210 liters of breath. Ray was then charged with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A) (1) and (3) and traveling the wrong way on a one way street in violation of Springfield City Ordinance Section 331.30.

Ray entered a plea of not guilty to the charges and subsequently filed a motion to suppress the results of the breath test and filed

a motion to appoint an expert witness at public expense. A pretrial hearing was held at which Ray alleged that due to violations of Ohio Administrative Code Sections 3701-52-01, 3701-53-02 and 3701-53-04, the breath test was inaccurate and therefore the results should be suppressed. Ray also contended in his motion to appoint an expert witness, that in order to prepare an appropriate defense and in order to properly cross-examine the State's witnesses he needed the assistance of an engineering expert. The court chose to reserve its ruling on these motions and permitted the State to go forward with its witnesses. The State presented Trooper Richard Karns, Leonard Porter and Trooper Erin Babb. All three testified with regard to the intoxilyzer and the techniques used to insure its accuracy. Subsequently, the trial court denied Ray's motions to suppress the breath test results and to appoint an expert witness in a written entry dated July 24, 1989. Ray then entered a plea of no contest and was found guilty by the court of operating a motor vehicle while under the influence of alcohol. It is from this judgment that this timely appeal is brought.

For reasons of clarity, we will address Ray's assignments of error in reverse order.

In appellant's second and third assignments of error, he contends that the trial court erred in failing to grant his motion to suppress, where the State failed to demonstrate compliance with Ohio Administrative Code Sections 3701-53-01(B), 3701-53-02(C) and 3701-53-04, which state in part:

"3701-53-01(B):

"(B) At least one copy of the following written methods or techniques for performing tests in use under paragraph (A) of this rule shall be on file in the area where analytical tests are performed:

"(1) In the case of a breath testing instrument, the operational manual provided by the instrument's manufacturer;

"3701-53-02(C):

"(C) A radio frequency interference (RFI) survey shall be performed for each breath testing instrument listed in paragraphs (A)(1) to (A) (3) and (A) (5) of this rule that is in operation at each breath testing site. RFI surveys are not required for the instrument listed in paragraph (A) (4) of this rule. Survey results shall be recorded on the form set forth in appendix G to this rule. The original RFI survey form and any subsequent RFI survey

forms shall be kept on file in the area where tests are performed. A new survey shall be conducted when a breath testing instrument's spatial placement or axis is changed from that designated in the most recent survey form. Radio transmitting antennae shall not be used within any RFI-affected zone during conduct of a subject test or a calibration check.

"3701-53-04:

"(A) Breath testing instruments must be checked for calibration no less, frequently than once every seven days by a senior operator using a solution of ethyl alcohol approved by the director of health and using the calibration checklist for the instrument being checked, as set forth in appendices A to F to this rule."

It is Ray's contention that the State failed to properly perform the radio frequency interference (RFI) survey, failed to have a copy of the operation manual with the breath testing instrument and failed to have the instrument properly calibrated. Further, he contends that due to the noncompliance with the relevant administrative code sections, the results of his breath test were inaccurate and thus, should have been suppressed.

In *Mentor v. Giordano* (1976), 9 Ohio St. 2d 140, the Ohio Supreme Court held that before the results of a breathalyzer test given an accused are admissible against him, it is incumbent upon the State to show that the instrument was in proper working order and that its manipulation had the qualifications to conduct the test (affirmed in *Cincinnati v. Sand* (1975), 43 Ohio St. 2d 15). R.C. 4511.19 (B) provides that the court may admit evidence of the concentration of alcohol in the defendant's breath if the breath was analyzed in accordance with the methods provided by the director of health.

In *State v. Steele* (1977), 52 Ohio St. 2d 187, the Ohio Supreme Court held that the failure to observe the subject of the breath test for a few seconds did not invalidate the test result unless the defendant could produce evidence that he had ingested something prejudicial to the validity of the test results during these seconds. In *Steele,* the Court examined the basis for the given regulations in determining whether anything short of absolute compliance would prejudice the reliability of the test result.

The proof of a breathalyzer's proper calibration is a necessary prerequisite to the admission of the results into evidence in a R.C.

4511.19 prosecution. Pursuant to OAC 3701-53-04(A), all breath-testing devices must be calibrated no less frequently than once every seven days. See *Pioneer v. Martin* (1984), 16 Ohio App. 3d 478.

The State was able to demonstrate that the logbook for the machine indicated it had been calibrated on January 18 and 29, 1989. The appellant was tested on March 2, 1989, so the State failed to demonstrate compliance with the regulation. Since the calibration process is the only cross-check used to determine the accuracy of the testing instrument, the obvious, though unstated rationale for the rule is to show that the equipment was working properly both before and after any given test. Painter & Looker, *Ohio Driving Under the Influence Law* (1988), at 56.

*State v. Schuck* (1986), 22 Ohio St. 3d 296, the Ohio Supreme Court held that in analyzing the accuracy of a particular intoxilyzer reading, a court may not rely solely on the intoxilyzer's design specifications where data from calibration checks have been properly submitted. We agree with the appellant that the State's failure to demonstrate its compliance with OAC 3701-53-04 mandates that the results of the appellant's test results be rendered inadmissible.

The State's witnesses presented testimony as to the procedure used in conducting the radio frequency interference survey. Richard Karns, the chief electronic technician of the highway patrol, testified that he conducted the survey and sketched the floor plan surrounding the intoxilyzer and did the sketch freehand. (Tr. 13-14). He testified that the sketch was required by the RFI survey. On cross-examination, Karns stated that the sketch was not drawn to scale and in fact, did not accurately resemble the true dimensions of the room. (Tr. 14). Karns went on to testify as to the procedures used to conduct the RFI survey and stated that the reasoning behind the survey was to check for radio interference that may affect the results of the breath test. The survey requires that 8 axes be checked, each axis extending 30 feet from the machine in a different direction. It requires 2 people, both with radio transmitters. One person starts at each axis 30 feet away and begins walking toward the machine transmitting signals while the other person remains with the machine and records when interference is first detected by marking an "x" on the proper axis where the

interference began. The survey further requires all radio frequencies to be checked which are used in the vicinity.

Karns testified that there were only 4 x's marked on the survey sketch. (Tr.16). In addition, he testified that to his knowledge all 3 frequencies were tested (high, ultra high and mobile band frequencies), although he could not swear to the fact that the mobile band frequency was tested. (Tr. 16-18).

The State presented Leonard J. Porter, the chief toxicologist for the State of Ohio, who is the author of the RFI survey requirements. In his testimony, Porter testified that electromagnetic interference is everywhere in the environment and has the potential to cause interference with the breathalyzer's accuracy. (Tr. 50). He stated that the survey attempts to find any interference that would be present around the machine. When asked if the directions for the RFI survey were meant to be followed as written, Porter stated that "I am not one to place a direction out there and expect it not to be followed." (Tr. 65). Additionally, he stated that lack of compliance with the directives of the Department of Health "may limit the situations in which reliance could be placed on the test result." (Tr. 47). When asked about the testing of all the frequencies or bands Porter replied that they should all be tested and that by not doing so, interference could take place and go undetected and therefore cause the results to be inaccurate. (Tr. 70). Finally, Porter testified that the survey prepared by Trooper Karns only indicated 4 x's. (Tr. 71-72). We therefore must conclude that the RFI survey necessitates compliance with the specified requirements in order to prevent prejudice to the person being tested and that therefore substantial compliance is required. The survey was not conducted in substantial compliance and thus, the results of the breathalyzer should not have been admitted. *State v. Steele, supra.*

Therefore, based on the above reasoning, we find appellant's second and third assignments of error to be well taken.

In his first assignment of error, appellant contends that the trial court erred to his prejudice in failing to grant his motion to appoint an expert witness.

The General Assembly has determined that in cases of aggravated murder, indigent defendants must be provided with expert witnesses if such witnesses are "reasonably necessary"

for proper representation. R.C. 2929.024. In interpreting this statute, the Ohio Supreme Court has determined that expert witnesses are "reasonably necessary" for an indigent's defense based on:

1. The value of the expert assistance to the defendant's proper representation; and

2. the availability of other means to satisfy that need. *State v. Jenkins* (1984), 15 Ohio St. 3d 164. The Eighth District Court of Appeals has held that, despite the narrow wording of R.C. 2929.024, the *Jenkins* test applies to cases other than aggravated murder. *State v. Scott* (1987), 41 Ohio App. 3d 313. Therefore, we will employ the same analysis in the instant case.

Given that Ray's sole defense was the improper administration of the breath test due to the inadequate performance of the RFI survey, an expert who could testify as to the necessity of an appropriate RFI survey to detect interference in a breath test was obviously seminal to his proper representation. However, we find that the second factor of the *Jenkins* test has been met in that there was other means to satisfy his need. In reviewing the trial court's proceedings, it is clear that Ray was able to elicit the testimony needed for his defense by means of his cross-examination of Porter, the State's chief toxicologist. Ray was able to show that the RFI survey did not comply with the requirements set forth in the Ohio Administrative Code and that therefore, the breath test results were not reasonably guaranteed to be accurate and thus should have been inadmissible. This being the case, we cannot say that the trial court abused its broad discretion in denying Ray's request for an independent expert.

Based on the above analysis, we find appellant's assignment of error to be not well taken.

Judgment of the trial court will be reversed and this matter is therefore remanded to the trial court for further proceedings.

FAIN, J., and GRADY, J., concur.