"6. Premises having as their main or primary use pinball machines.

"Provided further that the use as specified in subsection L.1. through L.6. inclusive of this subsection shall not be within 1,000 feet of any church, hospital, school, library or playground or to any other use classified as institutional occupancy, nor within 1,000 feet of a residential district as set forth in Chapter 337 of the Codified Ordinances of Cleveland, Ohio, 1976. This prohibition with respect to the distance from residential districts shall be waived upon presentment to the City Planning Commission of a valid petition requesting such waiver, signed by fifty-one percent (51%) of those persons only, residing or doing business within 1,000 feet of the proposed location. The City Planning Commission shall supply such petitions upon request of any resident affected by this subsection.

"The circulator of the petition requesting a waiver shall subscribe to an affidavit attesting to the fact that the petition was circulated in accord with this section and that the circulator personally witnessed the signatures on the petition and that the same were affixed to the petition by the person whose name appeared thereon.

"Provided further that no permit premises shall have or offer more than one of the uses in subsection L.1. through L.4. inclusive of this subsection."

The STATE of Ohio, Appellee,

v.

TRILL, Appellant.

[Cite as *State v. Trill* (1991), 66 Ohio App.3d 622.]

Court of Appeals of Ohio,
Trumbull County.

No. 90–T–4393.

Decided Feb. 8, 1991.

*Stanley Elkins*, for appellee.

*Richard F. Schwartz*, for appellant.

PRYATEL, Judge.

On May 6, 1989, appellant, Nancy E. Trill, was driving northbound on Elm Road in Warren, Ohio. The arresting officer testified that appellant was driving with her high beams. When the officer flashed his lights twice and appellant failed to dim her lights, the officer turned around to stop her. Before pulling appellant over, the officer observed appellant weave out of the driving lane two times.

The officer pulled appellant over at 2:30 a.m. At that time, the officer noticed an obvious odor of an alcoholic beverage about the car and about her person. Furthermore, the officer testified that appellant stated that she had been drinking. In addition, the officer noted appellant had a flushed face, bloodshot, glassy eyes, and was very, very talkative.

After appellant produced her driver's license, the officer asked appellant to leave her vehicle to perform field sobriety tests. At the conclusion of these preliminary tests, appellant was told she was under arrest for driving under the influence and placed in the back seat of the cruiser.

At that point, the officer went to appellant's vehicle. After determining the passenger had been drinking and could not drive, the officer moved the vehicle into a parking space.

The breath test was administered to appellant at 3:02 a.m. The result was a .195 reading.

At appellant's arraignment on May 11, 1989 she pleaded not guilty. Subsequently, appellant filed a motion to suppress challenging the probable cause to arrest. After a hearing and reviewing additional information, the trial court overruled the motion to suppress. Thereafter, appellant entered a no contest plea. Appellant has timely filed a notice of appeal raising the following two assignments of error:

"1. The trial court erred to the prejudice of the appellant in finding that the state complied with the rules and regulations of the Ohio Health Department in administering the breath test to the appellant.

"2. The trial court erred to the prejudice of the appellant in finding that there was probable cause to arrest the appellant for operating a motor vehicle while under the influence of alcohol and therefore denying the appellant's motion to suppress."

Appellant's first assignment is bifurcated into two separate issues: The first alleging that appellant inserted a stone into her mouth within twenty minutes of taking the test; and, the second alleging the state had failed to establish that the Radio Frequency Interference ("RFI") survey had been performed in accordance with requirements.

The first issue to be addressed is whether appellant had taken any material into her mouth during the twenty minutes prior to the administration of the breath test. This court on more than one occasion has concluded:

" * * * Before the results of alcohol tests are admissible as evidence, it is incumbent upon the state to prove the specimen was taken and analyzed in accordance with the methods and rules established by the Ohio Department of Health." *State v. Joles* (Feb. 5, 1988), Lake App. No. 12–171, unreported, at

3, 1990 WL 312854; *State v. Bennett* (1990), 66 Ohio App.3d 595, 597, 585 N.E.2d 897, 898, quoting *Joles, supra.* See, also, *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740.

Ohio Adm.Code 3701–53–02 requires that when a breath test is administered on a BAC verifier that the testing officer must observe the subject for twenty minutes prior to testing to prevent oral intake of any material. Appellant argues that the arresting officer was not with her the entire twenty minutes prior to the testing and failed to ask her if she had put anything into her mouth in the previous twenty minutes before administering the test.

Specifically, appellant alleges that after the officer had placed her in the back seat of the cruiser, she inserted a stone she had in her jacket pocket into her mouth, and kept it there until she was walking into the police station. Appellant further contends that she was alone in the cruiser five to six minutes while the officer spoke with the passenger and moved appellant's vehicle.

In *Steele, supra,* the Ohio Supreme Court held that the state must prove that the arresting officer substantially complied with the rules and regulations promulgated by the Ohio Department of Health. Specifically, in *Steele,* the arresting officer did take his eyes off the accused while walking around to the passenger side of the patrol car. Despite this interval of time, the court held that a proper foundation for the admission of the test results had been established.

Furthermore, in *State v. Michael* (July 15, 1988), Portage App. No. 1811, unreported, at 6 and 7, 1988 WL 75727, this court held, despite "moments when appellant may not have been within officer's sight," that there was nothing in the record contrary to "the doctrine of substantial compliance." In *Michael,* appellant alleged that the officer walked to appellant's vehicle, got in and removed the keys and walked back. This court noted that there was nothing in the record to indicate that officer did not maintain observation of appellant during most of this interval. *Id.* at 6.

Likewise, in *State v. Buhite* (June 10, 1988), Portage App. No. 1812, unreported, 1988 WL 61470, the court held that since there was no evidence that appellant had eaten or drunk within the twenty-minute period, the mere assertion of a hypothetical ingestion was not enough to rebut the presumption of a reading of greater than .10.

With the above case law in mind, should the trial court have suppressed the evidence based on appellant's assertions she had not been continuously observed for twenty minutes prior to taking the test when she inserted the stone in her mouth?

After hearing the above evidence, the trial court concluded that appellant was placed under arrest at 2:40 a.m., and that the breath test was taken at 3:02, giving two minutes leeway. Furthermore, based on the officer's testimony, the trial court did not find credible appellant's testimony that she was alone in the cruiser for five to six minutes. Furthermore, there seems to be some inconsistency in appellant's testimony. The arresting officer testified that she did not have a coat while appellant stated that she had a stone in her jacket pocket and put it in her mouth. The inconsistency is further confirmed by the Impaired Driver Report which states the type and color of clothes appellant was wearing; neither jacket nor coat was noted. As a result, appellant's motion to suppress was denied.

■ Since appellant was not left alone for any period of time and there is a serious credibility question whether appellant did indeed insert part of a stone into her mouth, the trial court did not err in denying the motion to suppress.

■ The second issue raised in the first assignment is whether the state failed to establish that the RFI survey was performed in accordance with the requirements of the Ohio Department of Health.

Basically, appellant is challenging the breathalyzer results because the proper foundation was not established.

Ohio Adm.Code Section 3701–53–02(C) provided:

"A radio frequency interference (RFI) survey shall be performed for each breath testing instrument listed in paragraphs (A)(1) to (A)(3) and (A)(5) of this rule that is in operation at each breath testing site. RFI surveys are not required for the instrument listed in paragraph (A)(4) of this rule. Survey results shall be recorded on the form set forth in appendix G to this rule. The original RFI survey form and any subsequent RFI forms shall be kept on file in the area where tests are performed. A new survey shall be conducted when a breath testing instrument's spatial placement or axis is changed from that designated in the most recent survey form. Radio transmitting antennae shall not be used within any RFI-affected zone during conduct of a subject test or a calibration check."

This court was faced with the same challenge in *State v. Bennett, supra.* This court used the first district's analysis of the requirements of Appendix G of Ohio Adm.Code 3701–53–02:

" 'As of January 1, 1987, the Director of Health set forth a more exact and reliable method of "surveying" intoxilyzers (and other breath-testing instruments) to assure noninterference by radio transmissions. Ohio Adm.Code 3701–53–02 as effective on that date requires the measurement of the exact distances at which radio transmissions (on all frequencies used by the particu-

lar police department) actually interfere with the operation of the intoxilyzer and cause a variance in the "display" greater than .005. The regulation requires the participation of two officers with hand radios; one officer remains at the intoxilyzer to verify the receipt of radio transmissions and to observe the "display" readings, and the other transmits radio messages while moving from thirty feet away towards the intoxilyzer along eight specific radials (all radials make an angle of forty-five degrees with each of the two adjoining radials). The results are recorded and remain in effect until the intoxilyzer is moved or its axis is changed.'" *Bennett, supra,* at 597, 585 N.E.2d at 898, quoting *State v. Fley* (Dec. 14, 1988), Hamilton App. No. C–870811, unreported, at 4–5, 1988 WL 133000.

In *Bennett,* this court concluded that the internal testing mechanism printout noting "no RFI present" was insufficient to fulfill the promulgation of Ohio Adm.Code 3701–53–02.

"Before the results of alcohol tests are admissible as evidence, it is incumbent upon the state to prove the specimen was taken and analyzed in accordance with the methods and rules established by the Ohio Department of Health." *State v. Joles, supra,* at 3.

Unlike *Bennett, supra,* in the present case, there is evidence in the record to support a finding that the test was conducted within the dictates of Ohio Adm.Code 3701–53–02(C). There was an RFI survey submitted into evidence. Included in this survey is a check list on radio information and a floor plan. Despite appellant's assertion of no competent credible evidence, the RFI survey presented the necessary evidence. Thus, the trial court did not err in denying appellant's motion to suppress. The first assignment is without merit.

■ In appellant's second assignment, she contends that at the time she was seized by the police officer, there was insufficient cause to justify the seizure of appellant.

Appellant does not contest that the initial stop for the headlight violation was permissible. The officer had specific and articulable facts before him that would "reasonably warrant" the investigative stop. *State v. Richmond* (Sept. 14, 1990), Portage App. No. 90–P–2152, unreported, 1990 WL 132257, citing *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. What appellant does maintain is that the officer's investigation did not rise to probable cause for driving under the influence.

Upon approaching appellant's vehicle, the arresting officer noted "she appeared to be under the influence. She had flushed face, bloodshot, glassy eyes, and [was] very very talkative." Furthermore, the officer noted that she

drifted out of her lane two times and had failed to dim her headlights despite the two chances he gave her to dim her lights. (The officer flashed his lights twice.) Moreover, there was an odor of alcohol about her person.

This combination of factors supplied the officer with probable cause to administer a field sobriety test. Therefore, this second assignment is also without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and CACIOPPO, J., concur.

MARY CACIOPPO, J., of the Ninth Appellate District, sitting by assignment.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.

CHRISTLEY, Presiding Judge, concurring.

I would concur and note that appellant's first assignment fails to demonstrate any prejudice. She failed to assert by argument or evidence that the validity of the test results were affected in any way by the earlier presence of the stone. Also, there is no claim of any ingestion and this district and others have required some evidence thereof. *State v. Birth* (1987), 41 Ohio App.3d 112, 534 N.E.2d 909, citing *State v. Durdel* (Aug. 23, 1985), Sandusky App. No. S–85–11, unreported, 1985 WL 7574.