OPINION
Plaintiff, State of Ohio, appeals a December 12, 2000 decision of the Franklin County Municipal Court granting defendant Pamela Kolesar's motion to suppress evidence obtained as a result of a field sobriety test. Before the trial court, defendant argued that the test was not administered in strict compliance with the National Highway Traffic Safety Administration's Student Manual ("NHTSA manual") and, therefore, that that evidence could not be considered in determining whether the officer had probable cause to arrest the defendant.
Plaintiff sets forth the following three assignments of error:
 [1.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE STATE IN FINDING THAT OFFICER WEST DID NOT ADMINISTER THE STANDARD FIELD SOBRIETY TESTS IN STRICT COMPLIANCE WITH THE INSTRUCTIONS CONTAINED IN THE STANDARDIZED FIELD SOBRIETY TESTING STUDENT MANUAL PUBLISHED BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION.
 [2.] EVEN IF THE TESTS WERE NOT CONDUCTED IN STRICT COMPLIANCE WITH THE REQUIREMENTS OF THE NHTSA MANUAL, THE COURT ERRED IN FAILING TO CONSIDER THE OBSERVATIONS OF THE OFFICER DURING THE TESTS AS THE
OPINION OF A LAY WITNESS AS TO WHETHER OR NOT THE APPELLEE WAS UNDER THE INFLUENCE OF ALCOHOL.
 [3.] EVEN IF THE COURT DID NOT ERR IN REFUSING TO CONSIDER THE RESULTS OF THE FIELD SOBRIETY TESTS FOR PURPOSES OF PROBABLE CAUSE, THE COURT ERRED TO THE PREJUDICE OF THE STATE IN DETERMINING THAT THERE WAS NO PROBABLE CAUSE TO ARREST APPELLEE FOR OMVI.
Officer Andrew West testified at the suppression hearing that he observed a vehicle stopped in an Ohio State University parking lot in the early morning hours of June 18, 2000. Officer West also observed that the occupant of the vehicle was an apparently distraught female, who was talking on her cellular phone. The vehicle was running, and the headlights were on. (11/8/00 Tr. 8-10.) Because there had been several cars broken into in that lot, and because the occupant of the vehicle appeared upset, Officer West approached to see what was wrong.
At first, Officer West and the defendant spoke while the defendant remained seated in her car. West testified that as he spoke with the defendant, he noticed a strong odor of alcohol. When questioned, defendant explained that she had consumed two to three beers that evening. As she did so, West also noticed that the defendant's speech was slurred. (11/8/00 Tr. 11-12.)
During the course of their conversion, West asked the defendant to exit her vehicle. She complied with this request; however, as she exited the vehicle she leaned against it for support. West noticed that the defendant's eyes were red and bloodshot. He then asked the defendant if she knew the English alphabet, and she acknowledged that she did. When asked how many letters there were in the alphabet, defendant answered fifty-two; however, she then changed that response to forty-two. West then asked her to recite the entire alphabet, which defendant was unable to do. According to Officer West, defendant began to cry on more than one occasion. (11/8/00 Tr. 13-15.)
Based upon the defendant's conduct, Officer West administered a field sobriety test. Specifically, West administered the "walk-and-turn" test. During his testimony, West explained the manner in which he asked the defendant to perform the "walk-and-turn" test. It is undisputed that, according to the NHTSA manual, the following procedure should be followed when administering this test:
Procedures for Walk-and-Turn Testing
 1. Instructions Stage: Initial Positioning and Verbal Instructions
 For standardization in the performance of this test, have the suspect assume the heel-to-toe stance by giving the following verbal instructions, accompanied by demonstrations:
 "Place your left foot on the line." (Place your own left foot on the line to demonstrate.)
 "Place your right foot on the line ahead of the left foot, with heel of right foot against toe of left foot." (Demonstrate).
"Place your arms down at your side."
 "Keep this position until I tell you to begin. Do not start to walk until I tell you to do so."
 "Do you understand the instructions so far?" (Make sure suspect indicates understanding.)
2. Demonstrations and Instructions for the Walking Stage
 Explain the test requirements, using the following verbal instructions, accompanied by demonstrations:
 "When I tell you to start, take nine heel-to-toe steps down the line, turn around, and take nine heel-to-toe steps back up the line." (Demonstrate 2 or 3 heel-to-toe steps.)
 "When you turn, keep the front foot on the line, and turn by taking a series of small steps with the other foot, like this." (Demonstrate).
 "While you are walking, keep your arms at your sides, watch your feet at all times, and count your steps out loud."
 "Once you start walking, don't stop until you have completed the test."
 "Do you understand the instructions?" (Make sure suspect understands.)
 "Begin, and count your first step from the heel-to-toe position as `One.'"
The record reveals that Officer West deviated from the above-delineated procedures, as follows: (1) Officer West did not assign a line upon which defendant should walk, but instead instructed her to imagine a straight line; (2) Officer West did not instruct defendant to place her left foot on the line or to count aloud while taking her steps; and (3) Officer West failed to instruct the defendant to continue walking until she completed the evaluation. (11/8/00 Tr. 50-54.)
Officer West also asked the defendant to perform what is known as the "one-leg" test. Pursuant to the NHTSA manual, the procedures for administering this test are as follows:
Procedures for One-Leg Stand Testing
 1. Instructions Stage: Initial Positioning and Verbal Instructions
 Initiate the test by giving the following verbal instructions, accompanied by demonstrations.
 "Please stand with your feet together and your arms down at the sides, like this." (Demonstrate)
 "Do not start to perform the test until I tell you to do so."
 "Do you understand the instructions so far?" (Make sure suspect indicates understanding.)
 2. Demonstrations and Instructions for the Balancing and Counting Stage
 Explain the test requirements, using the following verbal instructions, accompanied by demonstrations:
 "When I tell you to start, raise one leg, either leg, approximately six inches off the ground, toes pointed out." (Demonstrate one leg stance.)
"You must keep both legs straight, arms at your side."
 "While holding that position, count out loud for thirty seconds in the following manner: `one thousand and one, one thousand and two,' until told to stop." (Demonstrate a count, as follows: "one thousand and one, one thousand and two, etc." Officer should not look at his foot when conducting the demonstration OFFICER SAFETY.)
 "Keep your arms at your sides at all times and keep watching the raised foot."
 "Do you understand?" (Make sure suspect indicates understanding.)
 "Go ahead and perform the test." (Officer should always time the 30 seconds. Test should be discontinued after 30 seconds.)
 Observe the suspect from at least 3 feet away. If the suspect puts the foot down, give instructions to pick the foot up again and continue counting from the point at which the foot touched the ground. If the suspect counts very slowly, terminate the test after 30 seconds. If the suspect is counting quickly, have the suspect continue counting until told to stop.
The record also reveals that Officer West deviated from the established procedure of administering the one-leg test. Specifically, West failed to give the instructions in order, and omitted certain parts of the instructions, including the instruction that defendant must keep both legs straight, and her arms at her side. (11/8/00 Tr. 58-60; 12/12/00 Tr. 3-7.)
Officer West next explained the manner in which he administered the "horizontal gaze nystagmus" ("HGN") test. Pursuant to the NHTSA guideline manual, the HGN test is to be administered as follows:
 Check the suspect's left eye by moving the stimulus to your right. Move the stimulus smoothly, at a speed that requires about two seconds to bring the suspect's eye as far to the side as it can go. While moving the stimulus, look at the suspect's eye and determine whether it is able to pursue smoothly. Now, move the stimulus all the way to the left, back across suspect's face checking if the right eye pursues smoothly. Movement of the stimulus should take approximately two seconds out and two seconds back for each eye. Repeat the procedure.
Officer West testified that he observed defendant's left eye two times before he observed her right eye a total of two times. As set forth above, this deviates from the procedures listed in the NHTSA manual. (12/12/00 Tr. 9.) Although Officer West admitted that he did not conduct the tests exactly as they appear in the NHTSA manual, he contended that he had complied with the requirements of the manual. (12/12/00 Tr. 6.)
Having heard the evidence presented in support and against the defendant's motion to suppress, the court indicated that the issues were whether or not the stop and detention of the defendant was appropriate, and whether there was probable cause to arrest the defendant for the offense of operating a motor vehicle while under the influence of alcohol. On the facts presented, the trial court concluded Officer West acted properly when he stopped to investigate defendant's parked car. However, the court concluded that the state did not present sufficient evidence of probable cause to believe that the defendant was operating a motor vehicle while under the influence of alcohol, as the court found that the evidence of the field sobriety test had to be suppressed. In its ruling, the court explained:
 The second purpose of this motion is to test the constitutionality of the probable cause to arrest in this matter. The Homan case puts this Court in a unique and unusual circumstance. Normally, I would be placed, in effect, in the shoes of the reasonable police officer to determine whether or not there was probable cause to believe that this offense had occurred. Well, however, under Homan, the Ohio Supreme Court has ordered that I may not consider certain factors that were considered by the officer at the scene. Those factors that I may not consider as evidence in this case involve administration of field sobriety tests unless those tests were performed strictly in compliance with the manual and training as indicated in the Homan case; therefore, this Court finds, based upon the testimony, I am precluded from considering the defendant's performance on the horizontal gaze nystagmus field sobriety test, on the walk-and-turn test and on the one-leg stand, even though that was information that was available to this police officer and information upon which he based a determination to make this arrest, a highly difficult position for a reviewing body to be placed in in making a decision regarding this officer's probable cause.
 But the Ohio Supreme Court has ruled in this matter, and its ruling strictly binds this Court, as well. I must agree with Mr. Saia's rendition of Homan. The Court emphasizes over and over and over again that this evidence is not admissible for purposes of determining probable cause unless there's total, strict compliance. For whatever reasons, the Homan Court felt necessary to impose such a standard.
 As a result, this Court is merely to determine whether or not the following indicia support probable cause for arrest for operating a motor vehicle while under the influence: An odor of alcohol, an admission to drinking, some alleged slurred speech. The officer's testimony itself attributed the redness in the eyes to the crying and noted on several occasions in his testimony that Miss Kolesar was visibly upset, and, as a matter of fact, had out emotional outbursts during the period of time that he was attempting to administer the field sobriety tests.
 The use of the vehicle for support upon exiting the vehicle and the inability to recite the alphabet, those indicia, while reasonable, fail to rise to the level of probable cause for an arrest in that they are not coupled with any demonstration that the impairment, if there was any, was sufficient to appreciably impair the operation of a motor vehicle. Probable cause to arrest in an OMVI is not simply impairment in a motor vehicle, it is impairment sufficient to appreciably impair and impede the ability to safely operate the motor vehicle.
 Just for clarification, had there been some evidence of erratic operation of this motor vehicle that could be attributed to impairment, the ruling in this case may be different. But absent that evidence, this Court feels that the evidence I am permitted to consider does not constitute the requisite probable cause to arrest in this matter and, therefore, grants the motion to suppress on the issue of probable cause. [12/12/00 Tr. 25-27.]
In its first assignment of error, plaintiff argues that the trial court erred when it concluded Officer West did not properly administer the field sobriety test in strict compliance with the instructions contained in the NHTSA manual. In support of this argument, plaintiff maintains that it is sufficient that the guidelines were substantially complied with, i.e. Officer West instructed the defendant on the important elements, although in a different order than the manual lists them. Although this might be true, this court disagrees with plaintiff's assertions.
The Ohio Supreme Court explained in State v. Homan (2000),89 Ohio St.3d 421, that "[I]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Id. at paragraph one of the syllabus.
In Homan, an Ohio State Highway Patrol trooper observed the defendant's vehicle drive left of center on two occasions. As a result, the trooper stopped the defendant for questioning. According to the trooper, as he approached the defendant, he smelled a strong odor of alcohol and noticed the defendant's eyes were red and glassy. Thereafter, the trooper administered the walk-and-turn test, the one-leg stand test, and the HGN test. However, he later admitted that he deviated from established police practice by conducting the walk-and-turn test between his patrol car and defendant's car, that he gave the defendant the option of turning either to the right or to the left after completing the required number of steps, that he erred in the manner in which he instructed defendant on how to perform the test, and that he conducted the test on an uneven gravel surface. With regard to the HGN test, the trooper admitted that he failed to hold the defendant's eyes at maximum deviation for the standard four-second interval and, also, that he did not move the stimulus at a pace which would take four seconds to move the defendant's eyes from a forward gaze to the right. Prior to trial, the court denied the defendant's motion to suppress, finding that, taken as a whole, the field sobriety test indicated sufficient impairment to support a finding of probable cause notwithstanding the trooper's failure to strictly comply with established procedure. The defendant was ultimately convicted of driving under the influence, and filed a timely notice of appeal.
Upon review, the Sixth District Court of Appeals concluded that the trial court had improperly admitted the results of the field sobriety test as the trooper did not strictly comply with standardized testing procedures in administering the walk-and-turn and HGN tests. As such, the court concluded those tests could not form the basis for probable cause to arrest. However, it also concluded that, even with the suppression of the walk-and-turn and HGN tests, there remained sufficient evidence upon which the trooper could have relied in arresting the defendant. When the matter proceeded before the Ohio Supreme Court, the court specifically noted:
 When field sobriety testing is conducted in a manner that departs from established methods and procedures, the results are inherently unreliable. In an extensive study, the National Highway Traffic Safety Administration ("NHTSA") evaluated field sobriety tests in terms of their utility in determining whether a subject's blood-alcohol concentration is below or above the legal limit. The NHTSA concluded that field sobriety tests are an effective means of detecting legal intoxication "only when: the tests are administered in the prescribed, standardized manner[,] * * * the standardized clues are used to assess the suspect's performance [, and] * * * the standardized criteria are employed to interpret that performance." National Highway Traffic Safety Adm., U.S. Dept. of Transp., HS 178 R2/00, DUI Detection and Standardized Field Sobriety Testing, Student Manual (2000), at VIII-3. According to the NHTSA, "[i]f any one of the standardized field sobriety test elements is changed, the validity is compromised." Id. Experts in the areas of drunk driving apprehension, prosecution, and defense all appear to agree that the reliability of field sobriety test results does indeed turn upon the degree to which police comply with standardized testing procedures. See, e.g., 1 Erwin, Defense of Drunk Driving Cases (3 Ed. 1997), Section 10.06[4]; Cohen Green, Apprehending and Prosecuting the Drunk Driver: A Manual for Police and Prosecution (1997), Section 4.01.
 We too have recognized that while field sobriety tests are a potentially effective means of identifying intoxicated drivers, these tests' reliability depends largely upon the care with which they are administered. In State v. Bresson (1990), 51 Ohio St.3d 123, 554 N.E.2d 1330, we considered whether a police officer may testify at trial regarding a driver's performance on the HGN test as it pertains to the issue of probable cause. In holding that such testimony is admissible, we stressed the importance of the testing process. We noted that the arresting officer's knowledge of the test, his training, and his ability to interpret his observations are key considerations in determining admissibility. Id., 51 Ohio St.3d at 129, 554 N.E.2d at 1336. Although the only test at issue in Bresson was the HGN, we suggested that these strict prerequisites to admissibility would also apply to the other field sobriety tests, including the walk-and-turn and one-leg stand tests. Id.
 The small margins of error that characterize field sobriety tests make strict compliance critical. * * *
 The HGN test is not the only field sobriety test that requires special care in its administration. With respect to the walk-and-turn test, for example, it is important that the investigating officer have the suspect balance heel-to-toe while listening to his or her instructions on how to perform the test, a step that was omitted by Trooper Worcester. The ability or inability of the suspect to keep his or her balance while simultaneously listening to instructions is an important test clue. NHTSA Student Manual, at VIII-11. Even the seemingly straightforward one-leg-stand test requires precise administration. For instance, a police officer must make sure that the suspect keeps his or her foot elevated for the full thirty-second duration. Some intoxicated persons can competently perform the test for up to twenty or twenty-five seconds. Erwin, at Section 10.04[1]. [Homan at 424-426.]
In the present case, plaintiff attempts to revitalize the substantial compliance argument rejected by the Ohio Supreme Court in Homan. While there is a difference between "strict compliance" and "substantial compliance," cf. State v. Plummer (1986), 22 Ohio St.3d 292, and State v. Steele (1977), 52 Ohio St.2d 187, here the trial court properly found that strict compliance was required, and that Officer West did not in fact strictly comply with the procedures as outlined in the NHTSA manual. As such, plaintiff's first assignment of error is not well-taken.
In its second assignment of error, plaintiff contends the trial court should have taken Officer West's personal observations into account. Having reviewed the record, it is apparent that the trial court did, in fact, take Officer West's observations into account when it determined whether there existed probable cause to arrest the defendant. As such, plaintiff's second assignment of error is also not well-taken.
Plaintiff argues in its final assignment of error that, even if the field sobriety test result was properly suppressed, the trial court mistakenly concluded that there was no probable cause to arrest the defendant. In Homan, supra, the Supreme Court explained that, when determining whether law enforcement officers have probable cause to arrest an individual for driving under the influence, the question is whether, at the moment of arrest, the police had sufficient information derived from a reasonably trustworthy source of facts and circumstances which are sufficient to cause a prudent person to believe that a suspect was driving while under the influence. In making this determination, the court examines the "totality" of the circumstances leading to the defendant's arrest. State v. Timson (1974), 38 Ohio St.2d 122, and State v. Miller (1997), 117 Ohio App.3d 750.
After determining the result of the field sobriety test should be suppressed, the trial court explained that it was left with the following evidence from which to determine the existence of probable cause: an odor of alcohol about the defendant's person; defendant's admission to drinking; defendant's slurred speech; defendant's use of her vehicle for support upon exiting; and defendant's inability to recite the alphabet. The court then noted that Officer West testified that defendant was visibly upset, that he attributed the redness in her eyes to her crying, and that she had several emotional outbursts while she attempted to complete the field sobriety test. Having reflected upon these factors, the trial court concluded that the defendant's use of her vehicle for support, as well as her inability to recite the alphabet, failed to establish probable cause, as neither demonstrated the defendant's inability to operate a motor vehicle. Parenthetically, the defendant in Homan, supra, weaved and drove left of center on two occasions, and the Supreme Court specifically took that into consideration when it determined that, even after throwing out the field sobriety test evidence, there still was probable cause for the arrest. Those facts distinguish this case from Homan. Accordingly, plaintiff's third assignment of error is not well-taken.
For the foregoing reasons, all three of the plaintiff's assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.
TYACK and BOWMAN, JJ., concur.