OPINION
Appellant, Laura L. Nethken, appeals the February 27, 2001 judgment entry of the Portage County Municipal Court, Ravenna Division, denying her motion to suppress.
On February 1, 2000, a complaint was filed with the trial court charging appellant with driving under the influence of alcohol ("DUI"), in violation of the city of Ravenna Codified Ordinances 434.01(A)(1) and 434.01(A)(3), and with driving left of center, in violation of Ravenna Codified Ordinance 432.02. On February 1, 2000, appellant filed a motion to suppress. Appellant entered a plea of not guilty to the charges on February 2, 2000. A suppression hearing took place on June 5, 2000, and continued on November 20, 2000.[1]
Patrolman Jeffrey A. Wallis ("Patrolman Wallis") of the city of Ravenna Police Department testified that on January 30, 2000, at approximately 12:47 a.m., he was driving, in an easterly direction, behind appellant's vehicle. He witnessed appellant's pick up travel "half way into the westbound turn lane," and it continued to cross the centerline until he activated his overhead lights. Patrolman Wallis explained that he was "not sure of the exact distance that she straddled the line, but it was about a block." After appellant stopped her vehicle, Patrolman Wallis approached her and observed her attempting to place an orange Tic-Tac in her mouth. Appellant's husband was a passenger in the truck.
As appellant handed Patrolman Wallis her insurance card, he detected a strong odor of alcohol on her breath. He also testified that appellant's "speech was slurred and mumbled, and her eyes were bloodshot and watery." He proceeded to ask appellant if she had been drinking, and she said "yes, she [had] had a few to drink at the Eagle's Club." Patrolman Wallis asked appellant to step out of the car and perform some field sobriety tests. As appellant exited her auto, he noticed that she used the side of the vehicle to steady herself, and she seemed unsteady on her feet.
Patrolman Wallis had appellant perform the horizontal gaze nystagmus test, which she failed. He also asked her to do the one-leg stand test. Patrolman Wallis stated that while he was explaining the instructions to appellant, she swayed and lost her balance. Furthermore, he recalled that when she got to the count of eight, she skipped to eleven. She also almost lost her balance when the test began. The last test he requested appellant to perform was the walk and turn test, which she flunked. Based on the foregoing, Patrolman Wallis opined that appellant was under the influence of alcohol. He placed her under arrest and took her to the police station.
At the station, appellant was read form 2255. Thereafter, Patrolman Wallis asked her if she understood what was read to her. He then asked her if she wanted to submit to a breath test, and she agreed. During the twenty-minute observation period, Patrolman Wallis stated that he did not see appellant put anything in her mouth, but he did not check if she still had the Tic-Tac in her mouth.
Sergeant Richard Bennett ("Sergeant Bennett") of the city of Ravenna Police Department, who also observed appellant for the twenty-minute time period, performed the Breathalyzer test since he was the senior operator for the machine. He related that "based upon the pre-test and the post-test [of the machine] * * * that any test that was performed in between would have been accurate." He explained that he was the custodian of records for the police department. He stated that the first item in the city of Ravenna's exhibit was "the label from the solution of Bottle Number 631, which [was] the solution that was used to calibrate the machine and after the test that was given to [appellant]." Sergeant Bennett also testified as to the other items contained in the exhibit. Appellant's Breathalyzer test, which was administered around 1:30 a.m., revealed a blood alcohol level ("BAC") of .228.
Appellant also testified at the suppression hearing. She related that while she was at the Eagle's Club, she had two beers, but before she left she threw up. She also recalled that she had two beers at a friend's house in the afternoon, around 5:30 p.m.
On November 20, 2000, the trial court overruled appellant's motion to suppress. On February 27, 2001, appellant withdrew her plea of not guilty and entered a plea of no contest to the charges. She was found guilty of DUI, in violation of the city of Ravenna Codified Ordinance 434.01(A)(3). On motion of the prosecution, the trial court dismissed the other charges in violation of the city of Ravenna Codified Ordinances 434.01(A)(1) and 432.02. Appellant was sentenced to ninety days in jail, and she received a fine of $500. However, eighty-seven days of the sentence was suspended, and $300 of the fine was suspended on the condition that appellant complete a seventy-two hour DUI school, have no alcohol-related driving offense for two years, and not drive except for occupational driving privileges. Execution of the sentence was stayed pending appeal. Appellant timely filed the instant appeal and now advances the following as error:
 "[1.] The trial court erred, and abused its discretion, in overruling appellant's motion to suppress the breath test and admitting the city of Ravenna's Exhibit 1, including the BAC Data Master test result, since the prosecution failed to meet the department of health regulations and Ohio case law requirements regarding the administration of said test.
 "[2.] The trial court erred, and abused its discretion in overruling appellant's motion to suppress and for probable cause, and in finding that the initial stop and arrest of appellant was reasonable and constitutionally valid."
In her first assignment of error, appellant claims that the trial court erred by overruling her motion to suppress the Breathalyzer test because the prosecution failed to meet the department of health requirements regarding its administration.
At a suppression hearing, the trial court functions as the trier of fact, and therefore, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366; see, also,State v. Mustafa, 11th Dist. No. 2000-P-0116, 2001 Ohio App. LEXIS 5661, at 3-4, 2001-Ohio-7067. An appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. The reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met. Id.
Appellant claims that the officers of the city of Ravenna Police Department failed to observe her for twenty minutes prior to the administration of the Breathalyzer test in accordance with the department of health regulations.
Ohio Adm. Code 3701-53-02 mandates a twenty-minute observation period before the administration of a Breathalyzer test. Elyria v. Conley
(1994), 99 Ohio App.3d 40, 42. During this observation period, the testing officer must ensure that the subject refrains from the oral intake of any material. State v. Trill (1991), 66 Ohio App.3d 622, 625.
The Supreme Court of Ohio has held that "[w]hen two or more officers, one of whom is a certified operator of the BAC Verifier, observe a defendant continuously for twenty minutes or more prior to the administration of a breath-alcohol test, the observation requirement of the BAC Verifier operational checklist has been satisfied." Bolivar v.Dick, 76 Ohio St.3d 216, syllabus, 1996-Ohio-409. The Supreme Court also noted that the focus of the mandatory observation period is "`to prevent oral intake of any material' and not to ensure that a certified operator does the observing." Id. at 218, citing State v. Steele (1977),52 Ohio St.2d 187. Moreover, a Breathalyzer test administered in substantial compliance with department of health regulations is admissible absent a demonstration of prejudice. Bolivar at 218; Defiancev. Kretz (1991), 60 Ohio St.3d 1, 3; State v. Plummer (1986),22 Ohio St.3d 292, syllabus.
When there is testimony from a witness supporting an inference that it would be unlikely or improbable for an accused motorist to ingest anything during the twenty minutes prior to administering the breath test, the motorist must present evidence that he, in fact, did ingest some substance during that period because a mere assertion that ingestion was hypothetically possible will not render the results inadmissible.Steele, supra, at 191-192; In re Eric W. (1996), 113 Ohio App.3d 367,372.
In the case sub judice, there was sufficient competent and credible evidence in the record to demonstrate that appellant was observed for the twenty-minute period, by Sergeant Bennett, who administered the BAC Verifier test, and by Patrolman Wallis, the arresting officer. Both Patrolman Wallis and Sergeant Bennett testified that they viewed appellant for about twenty minutes prior to the administration of the test. Although they were unsure of the time they began watching appellant, Sergeant Bennett stated the he administered the test at 1:30 a.m., and the arrest took place at 12:47 a.m. Neither Patrolman Wallis nor Sergeant Bennett saw appellant ingest any substance during the twenty-minute period, even though Patrolman Wallis saw appellant insert a Tic-Tac in her mouth at the scene. Further, appellant did not present evidence that she ingested anything during the observation period. It is our view that appellant was observed for the required time period in substantial compliance with the department of health regulations. Thus, the test results were admissible.
Appellant also argues that the certificate demonstrating a valid calibration was not properly authenticated as it was not an original certificate, nor was it a certified copy by the custodian of the department of health. She claims that the alcohol check solution documents used for calibration were certified by the police record custodian without any evidence that he had any knowledge of which bottle was used in connection with the certification of the alcohol solution.
This court has stated that before a document can be entered into evidence, it must first satisfy the requirements of authentication found in the Ohio Rules of Evidence. Mustafa, supra, at 4, citing State v.Tannert (Mar. 16, 2001), 11th Dist. No. 2000-P-0028, 2001 WL 276969, at 1. Evid.R. 902 provides:
 "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
"* * *
 "(4) Certified copies of public records[.] A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any law of a jurisdiction, state or federal, or rule prescribed by the Supreme Court of Ohio. * * *."
Pursuant to Evid.R. 902(4), properly certified copies of public records are self-authenticating documents. Thus, the only prerequisite to authenticating such documents is that the custodian of records, or another person authorized to make the certification, certifies that the documents are true and accurate copies of the originals. Aurora v. Lesky
(1992), 79 Ohio App.3d 568, 571. In other words, extrinsic evidence is not required to authenticate or identify properly certified public records. See Evid.R. 901.
Therefore, the custodian of the records is not compelled to testify about the contents of the document being admitted to authenticate such document; rather, the custodian need only certify that the document being admitted is a true and accurate copy. To fully comply with his obligation under Evid.R. 902(4), the custodian merely has to compare the copy with the original in order to ensure that it is what it purports to be. This court has recently stated that "a police officer who is also the custodian of records for a law enforcement agency is not precluded from certifying that a public record is a true and accurate copy even if the record was either prepared by the custodian or otherwise identifies the officer in some manner." Mustafa, supra, at 7.
In the case at bar, it is our view that the exhibit was properly certified and authenticated pursuant to Evid.R. 902(4) since Sergeant Bennett, as custodian of the records for the city of Ravenna Police Department, executed an affidavit certifying that the documents were true and accurate copies of the original. Sergeant Bennett also testified as to the bottle number that was used. Hence, there was competent testimony regarding the bottle number used and substantial compliance with the department of health regulations.
Moreover, appellant was unable to point to any regulation not complied with by Sergeant Bennett. Since the department of health regulations were properly followed in calibrating the machine and the twenty-minute observation period was followed prior to administering the test, appellant did not prove that there was any basis for suppressing the Breathalyzer test. In addition, it is our view that there was sufficient evidence presented to support a finding that the instrument was in proper working order. Hence, the state met its burden of proof that the instrument was in proper working order and that its operator had the qualifications to conduct the test. Appellant's first assignment of error lacks merit.
For her second assignment of error, appellant posits that the trial court erred in overruling appellant's motion to suppress by determining that the initial stop and arrest of appellant was reasonable and constitutionally valid. The test for probable cause is:
 "[W]hether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio
(1964), 379 U.S. 89, 91.
Further, an officer's observation of any traffic violation constitutes probable cause sufficient to stop the vehicle observed violating such law. State v. Akers (Apr. 4, 1997), 11th Dist. No. 95-P-0073, 1997 WL 184760, at 3. This court has repeatedly held that when a police officer witnesses a minor traffic violation, he or she is warranted in making a limited stop for the purpose of issuing a citation. State v. Brownlie
(Mar. 31, 2000), 11th Dist. Nos. 99-P-0005 and 99-P-0006, 2000 WL 522463, at 2. The police officer may then investigate the detainee for DUI if there is a reasonable suspicion that the detainee is intoxicated based on specific and articulable facts. Id. In State v. Yemma (Aug. 9, 1996), 11th Dist. No 95-P-0156, 1996 WL 495076, at 3, we stated:
 "Once the officer has stopped the vehicle for some minor traffic offense * * * the officer may then proceed to investigate the detainee for [DUI] if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts * * *."
Here, Patrolman Wallis testified at the suppression hearing that he observed appellant's vehicle drive left of center, which rises above the crest of an articulable suspicion to stop. Hence, based on his observations, he had sufficient probable cause to perform the traffic stop.
This court has consistently held that a police officer who stops a driver for a traffic violation, may arrest that driver for DUI, after considering the totality of the circumstances, if indicia such as the time of night, smell of alcohol, erratic driving and unsatisfactory completion of the field sobriety tests exist. State v. Jennings (Mar. 3, 2000), 11th Dist. No. 98-T-0196, 2000 WL 263741, at 5; State v. Evans
(1998), 127 Ohio App.3d 56, 63, fn. 2.
In the instant matter, because Patrolman Wallis saw appellant commit a traffic infraction, he had probable cause to perform the traffic stop. Moreover, given the time of night, the odor of alcohol on appellant, appellant's slurred speech and bloodshot eyes, as well as Patrolman Wallis' observation of appellant traveling left of center, he had reason to suspect that appellant was operating a motor vehicle while under the influence of alcohol. Further, appellant's inability to perform the three field sobriety tests and her admission that she had been drinking constituted specific and articulable facts providing probable cause for Patrolman Wallis to effectuate appellant's subsequent arrest for DUI.
At oral argument, appellant's attorney suggested that there was snow covering the ground on January 30, 2000. However, at the suppression hearing Patrolman Wallis testified that "the pavement was wet [and] it began to snow." He did not indicate that there were three to four inches of snow on the ground. He specifically, stated that when they "exited the vehicle, there was not any snow on the ground. By the time that the stop was completed there was snow." Appellant related that when she exited her truck she "hit slush." Thus, the record does not support an argument that the centerline marking on Chestnut Road was not visible at the time of the stop involved in this case.
Consequently, the roadside detention of appellant and her ensuing arrest for driving while under the influence of alcohol were both constitutional. Under the totality of the circumstances, we conclude that the trial court did not err by overruling appellant's motion to suppress. The decision of the trial court was supported by competent, credible evidence in the form of Patrolman Wallis' testimony from the suppression hearing. Appellant's second assignment of error is without merit.
For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.
ROBERT A. NADER, J., DIANE V. GRENDELL, J., concur.
[1] At the end of the hearing on June 5, 2000, the trial court concluded that Patrolman Wallis had reasonable cause to stop appellant's vehicle and that there was probable cause for arresting her. The trial court continued the hearing to determine if the Breathalyzer test was done according to the department of health regulations.